**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT
PURSUANT TO FRCP 12(b)(2) AND 12(b)(6)**

## RELVANT FACTS

Dale D. Pierson ("plaintiff") is a resident of Illinois and currently employed as General Counsel to Local 150 of the International Union of Operating Engineers, AFL-CIO, headquartered in Countryside, Illinois, where he has worked for almost 14 years. (Doc. No. 12 First Amend. Compl. ¶ 2; http://www.pli.edu/Content/Faculty/ Dale Pierson/_/N-4oZ1z12npo?ID=PE1103707).  Plaintiff has practiced labor and employment law since 1982. *Id.* at ¶ 3.  He taught labor law as an adjunct professor at Northern Illinois University Law School in 2004 and 2005, and frequently speaks on labor and employment law topics at professional conferences throughout the country. *Id.*

Defendant National Institute for Labor Relations Research ("NILRR") is "a non-profit research facility analyzing and exposing the inequities of compulsory unionism." NILRR maintains its principal office at 5211 Port Royal Road, Suite 510, Springfield, Virginia 22151.  (Amend. Compl. ¶ 4). NILRR maintains a website at www.nilrr.org.  *Id.* NILRR's primary function is to act as a research facility for the general public. Exh. A, Dec. Stan Greer. Defendant Stan Greer ("Greer") is Senior Research Associate and Program Director for NILRR, posting articles on its website.  *Id.* Greer does not own any property in Illinois or have any assets in Illinois. *Id.* Likewise, NILRR does not have, nor has it ever had, any facilities, offices, or properties in Illinois.  *Id.* at ¶¶ 7-10. NILRR does not have any employees or registered agents in Illinois. *Id.* NILRR is not licensed in Illinois. Other than meetings held on two occasions over the course of its over 30 year history, agents or representatives do not travel to Illinois. *Id.*  NILRR has never engaged in any advocacy campaign in Illinois. *Id.*  Other than permitting general access to persons via its website and occasionally responding to individual requests for information, NILRR does not provide assistance to Illinois entities or individuals. *Id.*

According to plaintiff, shortly after Indiana passed its "Right-to-Work" law in 2012, he served as lead counsel in a lawsuit challenging its constitutionality entitled, *Sweeney, et al. v. Daniels*, Case No. 12

CV 00081, filed in the Northern District of Indiana. (Doc. No. 12 Compl. at ¶ 6). The District Court dismissed the suit without prejudice to re-filing certain claims. *Sweeney v. Daniels*, 2013 WL 209047 (N.D. Ind., Jan. 17, 2013). *Id.* The *Sweeney* plaintiffs (or "Union plaintiffs") appealed the dismissal of their federal claims to the Seventh Circuit, which affirmed. *Id.* Meanwhile, the Union plaintiffs re-filed their claims in Lake County, Indiana, in the case titled, *Sweeney, et al. v. Zoeller*, Case No. 45D01-1305-PL-52. *Id.* ¶ 7. On September 5, 2013, the Lake County Superior Court denied the State of Indiana's Motion to Dismiss and found the Indiana Right-to-Work law unconstitutional. *Id.* Thereafter, the Indiana Attorney General appealed that decision to the Indiana Supreme Court in the case entitled, *Zoeller v. Sweeney*, No. 45S-1309-PL-00596 ("Underlying Appeal"). *Id.*

According to plaintiff, throughout the Underlying Appeal and aforementioned litigation, the Union plaintiffs argued that "Right-to-Work" laws were fundamentally unfair. *Id.* ¶ 8. Plaintiff advocates that federal law requires unions to represent fairly all employees in any given bargaining unit regardless of their membership in the union. *Id.* He alleges that Right-to-Work laws permit individual employees to refuse to pay their fair share of the costs, allowing such employees to ride for free on the work of the union paid for by their coworkers. *Id.* According to plaintiff, proponents of Right-to-Work laws argue that unions need not represent employees that do not pay, and that unions could represent only those employees who want such representation. (Doc. No. 12 Compl. ¶ 9).

Plaintiff alleges that "[t]he 'minority representation' argument is a fallacy". *Id.* ¶ 10. According to the plaintiff, the National Labor Relations Act (NLRA) does not provide an alternative to majority status representation. *Id.* Plaintiff alleges that National Labor Relations Board (NLRB) jurisprudence makes it clear that "the essence of industrial democracy [in the United States], as contemplated and enforced by the [NLRA], is fundamentally based on majoritarian principles." [citation not included]. *Id.*

On September 4, 2014, the Indiana Supreme Court heard oral argument in the Underlying Appeal. Plaintiff made the aforementioned arguments to the Indiana Supreme Court. (Doc. No.

Compl. ¶ 11). A copy of the transcript of the hearing is attached hereto as Exhibit B.[1] On September 12, 2014, defendants posted an article on NILRR's website entitled "Operating Engineers Union Lawyer Flat-Out Lies to Indiana Supreme Court". The entire post reads as follows:

> Currently, the top bosses of two unions, the United Steelworkers (USW) and Local 150 of the International Union of Operating Engineers (IUOE), have cases before the Indiana Supreme Court in which they are trying to get Right to Work protections for Hoosier employees approved by state legislators two-and-a-half years ago judicially overturned.
>
> In a petition filed with the National Labor Relations Board seven years ago, lawyers for one of these two unions, the USW, acknowledged without qualification that, under Section 7 of the National Labor Relations Act (NLRA), in any workplace where no union is recognized as employees' "exclusive" bargaining agent, employees' right to bargain with their employer through a union "remain[s] available and protected, though on a nonexclusive basis, thus applicable to union members only."
>
> As anyone who has a good understanding of federal labor statutes and court precedents knows, the union lawyers for the USW brass, along with the officers of six other AFL-CIO-affiliated unions who signed on to the petition ("In the Matter of Rulemaking Regarding Members-Only Minority-Union Collective Bargaining"), were absolutely correct about the permissibility of members-only bargaining in 2007. And they are still correct today.
>
> How can it be, then, that Dale Pierson, the top lawyer for the other union seeking to overturn Indiana's Right to Work law judicially, told the Indiana Supreme Court on September 4 that union officials' representing only those who join and pay dues "is not a legal possibility"? (A video of the oral arguments in which Pierson claimed again and again that "the law does not allow members-only representation" is available at the end of the link below.)
>
> The answer is, quite simply, that Pierson flat-out lied. Evidently, he and the IUOE bosses for whom he is working agree that, if the Indiana Supreme Court acknowledges the truth about the permissibility of members-only bargaining as an alternative to monopoly bargaining for union officials, their anti-Right to Work case must fail. And therefore last week Pierson simply denied a truth that even his fellow assailants on Indiana's Right to Work law, the USW union hierarchy, have openly acknowledged in public legal documents.
>
> Because Thomas Fisher, the lead attorney representing Indiana as it defends its Right to Work law from the IUOE Local 150 brass, knows full well about the U.S. Supreme Court precedents, such as the 1938 Consolidated Edison v. NLRB ruling, that explicitly affirm that members-only bargaining is legal under the NLRA, and reminded the Indiana Supreme Court justices about them, it is unlikely that Pierson and his paymasters are going to get away with lying about federal labor law. But the fact that Pierson was willing to do it, and IUOE Local 150 kingpins were evidently willing to sign off on such a strategy, illustrates just how desperate they are to reinstate forced union dues and fees in Indiana. (A true and correct copy attached hereto as Exhibit C).

According to plaintiff, the above post was false.

Plaintiff further alleges that the NILRR post also refers to "a petition filed with the National Labor Relations Board seven years ago." (Doc. No. 12, Compl. ¶ 14). The post asserts that in the

---

[1] In addition, the hearing can be viewed at the following address: https://mycourts.in.gov/arguments/ [Search by Keyword *Zoeller*]. An electronic copy has been purchased by the defendant and can be made available to the Court if necessary.

petition ("2007 petition") lawyers for the Steelworkers union "acknowledged without qualification that, under Section 7 of the National Labor Relations Act (NLRA), in any workplace where no union is recognized as employees' 'exclusive' bargaining agent, employees' right to bargain with their employer through a union 'remain[s] available and protected, though on a non-exclusive basis, thus applicable to union members only.'" *Id.*; 2007 Petition attached hereto as Exhibit D.

According to plaintiff, the NILRR post fails to acknowledge that the 2007 petition was denied by the NLRB on August 26, 2011. (Doc. No. 12, Compl. ¶ 15.) Plaintiff further alleges that the 2007 petition asked the NLRB to adopt a rule that would require an employer "to bargain collectively with a labor organization that represents less than an employee-majority with regard to the employees who are its members, but not for any other employees." *Id.* Plaintiff alleges the petitioners recognized that such "members only" bargaining was <u>not</u> recognized by the NLRB, and filed the petition, they said, so that employees would be "permitted to return to the exercise of the right to begin organizing and bargaining through unions that represent their members only." *Id.* The Board denied the 2007 petition, in part, because it called for "a significant reinterpretation" of the NLRA, and necessarily a devotion of "substantial" Board resources which it was not prepared to make. *Id.* Though unclear, it appears that plaintiff is alleging that defendants' reference to the 2007 petition is false.

Significantly, plaintiff does not deny that, during oral argument before the Indiana Supreme Court, he made the statement referenced in the post. Exh.B, p. 28 ("that is a fallacy")[2]. Likewise, plaintiff does not deny that the 2007 petition contains the language referenced in the post[3]. Finally, the Indiana Supreme Court did not rule in favor of the Union. Indeed, the Court expressly disagreed with the Union's argument:

> The Union responds that "[c]hoosing to represent members-only bargaining units is not an option under the [National Labor Relations Act]" because the "[National Labor Relations Board] will not process a representation petition by a union seeking a members-only

---

[2] Plaintiff also states during oral argument: "the law does not allow members-only representation" (Exh. B, p. 29).
[3] He also admits, during oral argument, that he has taken on at least one occasion a stance inconsistent with the position that members-only representation is a fallacy. Exh. B, pp. 29-30.

bargain[ing]unit" and "a union that proposes to represent a minority of the bargaining unit has no remedy if the employer refuses to bargain with it." We disagree. *Zoeller v. Sweeney*, 19 N.E.3d 749, 2014 Ind. LEXIS 893 (Ind. 2014).

## STANDARD OF REVIEW

Fed. Rule Civ. Proc. 12(b)(2) provides for dismissal where a court lacks personal jurisdiction over a party. Once the defendant moves to dismiss the complaint under Rule 12(b)(2), the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo*, S.A., 338 F.3d 773, 782 (7th Cir. 2003). In ruling on a motion to dismiss pursuant to Rule 12(b)(2), a court may consider matters outside of the pleadings. *Id*. A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

I.  **PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO FRCP 12(b)(2) AS THIS COURT CANNOT EXERCISE PERSONAL JURISDICTION OVER DEFENDANTS.**

This Court may exercise jurisdiction over defendants only if authorized both by the United States Constitution and Illinois law. *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011); 735 ILCS 5/2-209(c). The test for personal jurisdiction under the Due Process Clause authorizes a court to exercise jurisdiction over a non-resident defendant only if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v.*

*Denckla*, 357 U.S. 235, 253 (1958). The "minimum contacts" requirement ensures that a nonresident defendant will not be forced to litigate in a jurisdiction as a result of "random, fortuitous, or attenuated contacts" with the forum or the unilateral activity of the plaintiff; the defendant "should reasonably anticipate being haled into court" there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985). Personal jurisdiction may be "general" or "specific." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).

### A. This Court cannot exercise general personal jurisdiction over Defendants.

General personal jurisdiction exists where the defendant's continuous operations within the forum state are "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Daimler AG*, 134 S. Ct. at 754 (quoting *Int'l Shoe Co.*, 326 U.S. at 318). Sporadic, or even frequent, transactions within a state are not sufficient to give rise to general personal jurisdiction; rather, the entity must be so enmeshed in the forum stated that it may be "fairly regarded as at home" there. *Goodyear Dunlop Tires, v. Brown*, 131 S. Ct. 2846, 2853-54 (2011). This Court has specifically found that maintenance of an accessible public interactive website alone does not permit the exercise of general jurisdiction. *Clover Techs. Group, LLC v. Oxford Aviation, Inc.,* 993 F. Supp. 2d 872, 880 (N.D. Ill. 2013) (refusing to permit general personal jurisdiction discovery and finding that "uncontested facts in both affidavits make very clear that [defendants] could not be 'fairly regarded as at home in Illinois'").

Here, there can be no dispute that Greer, who resides in Virginia, and NILRR, a Virginia entity that does not conduct business in Illinois, are not subject to general jurisdiction. The maintenance of a website and the fact that NILRR has held meetings in Chicago on only two occasions over the course of its 30 year history are simply not enough to confer general jurisdiction. Such facts do not demonstrate that NILRR was so enmeshed in Illinois to be regarded as at home for general jurisdiction. *Kipp v. SKI Enter. Corp. of Wis.*, 783 F.3d 695, 698 (7th Cir. 2015) (defendants' annual attendance of trade show in Chicago, use of show to market to Illinois residents and maintenance of website which attracts Illinois residents not sufficient as Supreme Court has "raised the bar" regarding general jurisdiction).

**B.  This Court cannot exercise specific personal jurisdiction over Defendants.**

Under the theory of specific jurisdiction, a plaintiff must show that the alleged controversy between the parties "arise[s] out of" or "relate[s] to" the defendant's forum contacts in addition to establishing that minimum contacts exist. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Walden v. Fiore*, 134 S. Ct. 1115, 1121 ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."). The Supreme Court has held that "constitutionally sufficient contacts can be imputed to a defendant if the defendant is accused of committing an intentional tort by actions that are 'expressly aimed' at the forum state." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010). The Seventh Circuit set forth an "express aiming" test requiring: "(1) intentional conduct or intentional and allegedly tortious conduct; (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt, or that the plaintiff would be injured, in the forum state. *Telemedicine Solutions LLC v. Wound Right Techs., LLC*, 27 F. Supp. 3d 883, 890 (N.D. Ill. 2014). The Supreme Court has emphasized that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 134 S. Ct. 1115, 1125; *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.,* 751 F.3d 796, 802 (7th Cir. 2014) ("there can be no doubt that the plaintiff cannot be the only link between the defendant and the forum.").

Here, defendants' allegedly tortious contacts with the forum state occurred exclusively via the Internet. The Seventh Circuit has concluded that "[u]sing a separate test for Internet-based contacts would be inappropriate" because the traditional minimum contacts analysis "remains up to this more modern task." *uBid, Inc. v. The GoDaddy Group, Inc.*, 623 F.3d 421, 431 n.1 (7th Cir. 2010). The relevant inquiry "boils down" to whether the defendant has purposely exploited or in some way targeted the forum state's market. *be2 LLC*, 642 F.3d at 558-59. "If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the

7

defendant may not be haled into court in that state without offending the Constitution." *Id.* at 559; *Illinois v. Hemi Grp., LLC*, 622 F.3d 754, 760 (7th Cir. 2010). Thus, plaintiff cannot meet the "express aiming" test "simply by showing that the defendant maintained a website accessible to residents of the forum state and alleging that the defendant caused harm through that website." *Mobile*, 623 F.3d at 446; *Bittman v. Fox*, 2015 U.S. Dist. LEXIS 127272, *19-20 (N.D. Ill. Sept. 23, 2015) ("In the end, [plaintiff's] case for personal jurisdiction over [defendant] boils down to the undisputed allegations that he republished and commented upon information concerning an Illinois resident employed by an Illinois library on a subject-specific watchdog website that is accessible by anyone, anywhere. On these facts, it would indeed offend traditional notions of fair play and substantial justice to hale into an Illinois court an online journalist who has no connection to the state merely because the subject of his article resides there. The writing and posting of the accompanying article, without more, do not suggest that [defendant] was purposefully directing or expressly aiming any conduct at Illinois…").

Here, the posting at issue reports on an event that occurred in Indiana involving legislation impacting Indiana citizens. It does not report on Illinois or reference Illinois at any point. While plaintiff happens to be an Illinois resident, this is not reported. Plaintiff is merely the "Union Attorney" acting on its behalf in Indiana. The posting reports on an issue affecting "Hoosier employees". Even assuming plaintiff can be deemed a subject of the report, Illinois courts have made it abundantly clear that the residence of the plaintiff alone is insufficient to support jurisdiction.

### C. Exercising personal jurisdiction over defendants would offend Due Process.

Exercising jurisdiction over the defendants in this matter would offend notions of fair play and substantial justice. The foreseeability critical to Due Process analysis is that defendants' conduct and connection with the forum State are such that it should reasonably anticipate being haled into court. *Jackson v. Cal. Newspapers P'ship*, 406 F. Supp. 2d 893 (N.D. Ill. 2005). Neither defendant maintains any significant contact or relationship to Illinois, nor does the offending conduct at issue involve Illinois. This Court must decline exercising personal jurisdiction over defendants.

8

II.     **DEFAMATION CLAIM SHOULD BE DISMISSED PURSUANT TO FRCP 12(b)(6).**

A.  **The statements made in the posting at issue are substantially true, precluding suit.**

To state a claim for defamation under Illinois law, a plaintiff "must present facts showing that the defendant made a false statement about [him], that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green v. Rogers*, 917 N.E.2d 450, 459, 234 Ill. 2d 478 (2009). A statement is non-actionable if it is substantially true. *Hnilica v. Rizza Chevrolet, Inc.*, 384 Ill. App. 3d 94, 893 N.E.2d 928, 931 (2008); *Tamburo v. Dworkin*, 974 F. Supp. 2d 1199, 1212 (N.D. Ill. 2013). The 'substantial truth' is shown where the 'gist' or 'sting' of the allegedly defamatory material is true." *Coghlan v. Beck*, 984 N.E.2d 132, 146, 2013 IL App (1st) 120891 (2013). The question of substantial truth may be determined as a matter of law. *Id.*; *Ludlow v. Northwestern Univ.*, 2015 U.S. Dist. LEXIS 13699 (N.D. Ill. 2015)[4]; *See, Bone v. Layfayette*, 919 F.2d 64, 67 (7th Cir. 1990) (while defendant "might have picked a kinder, gentler and more informative phrase" than "she lied", it was substantially true.); *Greene v. City of Neillsville*, 2009 U.S. Dist. LEXIS 65489 (W.D. Wis. July 29, 2009) (statement that plaintiff lied was substantially true).

Here, the statement made by Greer in the posting is substantially true. First, Greer is not attacking plaintiff in his posting, but rather pointing out an inconsistent position that has been maintained by Unions in their various advocacy efforts. Greer's posting speaks to the legal "strategy" which Union "kingpins" "sign off on." Greer specifically points out the inconsistent positions maintained by the Unions in the 2007 petition and the oral advocacy of plaintiff, an agent of one Union. Significantly, plaintiff never denies the content of the 2007 petition and his oral statement. Plaintiff never denies, nor can he, that he stated that it is a "legal impossibility" for a Union to represent only those who join and pay dues. He never denies that the 2007 Petition maintained a position to the contrary. Exhibit D, pp. 30-31. While there may have been more artful ways to get his point across

---

[4] Per standing order, all unreported cases without a Westlaw citation are attached hereto as Exhibit E in order of appearance.

(perhaps use of plaintiff's term "fallacious"), "lied" is substantially true and highlights the irritation Greer felt at the blatantly contradictory positions maintained by the Unions. Indeed, even the Indiana Supreme Court expressly questioned and disagreed with plaintiff's statements made at oral argument. *Zoeller v. Sweeney*, 19 N.E.3d 749, 753, 2014 Ind. LEXIS 893 (Ind. 2014).

**B. The statements in the posting are subject to innocent construction.**

Under the innocent construction rule, if a statement, with its words and meaning given their natural interpretation in context, may be innocently interpreted or interpreted as referring to someone other than the plaintiff, it cannot be actionable per se. *Mancari v. Infinity Broad. East Inc.*, 2004 U.S. Dist. LEXIS 23606, *7-9 (N.D. Ill. Nov. 22, 2004); *Chicago City Day Sch. v. Wade*, 297 Ill. App. 3d 465, 697 N.E.2d 389 (1st Dist. 1998) (in case where radio host criticized actions of school district, including that they were "just flat lying", Court found that while it was reasonable to conclude host was speaking about school officials, it was also possible she was referring to other parties). Illinois courts consistently find that the innocent construction rule favors defendants, requiring that a non-defamatory interpretation must be adopted if it is reasonable. *Mancari,*2004 U.S. Dist. LEXIS 23606, *7-9 *[supra]*.

Here, the Court can find that the statements are subject to an innocent construction. The post read in its entirety, as it should be, reflects that the statements are not really directed at the plaintiff but rather at the entire opposition, including the "USW brass", "fellow assailants"/ "paymasters", and "Local 150 kingpins" who signed off on the "strategy." The title refers to the "Union Lawyer" not Dale Pierson. His personal information and place of business are never identified. Viewed in its entirety, the "lied" or "untruth" comments are not directed at plaintiff the individual, but rather at the legal "strategy" of those who benefit from the position, a "strategy" that the "Local 150 kingpins" "sign off on" lest their "anti Right to Work case fail." Indeed, Greer's entire posting attacks this legal strategy, which has resulted in inconsistent positions - one taken at the hearing and another in the 2007 petition. The criticism attacks the collective, spanning over several years, not the individual, and it is specifically limited to one issue (i.e. the inconsistent position taken regarding members only

10

representation). Since the criticism is not directed at the plaintiff but rather the Union strategy, which the plaintiff happens to serve, the innocent construction rule applies.

### C. The statements in the posting are constitutionally protected opinion.

Neither an opinion that does not misstate actual facts, *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20, 110 S. Ct. 2695 (1990) nor rhetorical hyperbole, *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 607 N.E.2d 201 (Ill. 1992) constitute defamation. *Naylor v. Rockford Park Dist.*, 1999 U.S. Dist. LEXIS 12664, 1999 WL 626762 (N.D. Ill. July 14, 1999) (noting that statement calling someone a liar can be non actionable opinion); *Skolnick v. Correctional Med. Servs.*, 132 F. Supp. 2d 1116 (N.D. Ill. 2001)(letter accusing plaintiff of misrepresentation and "deliberate deception" found to consist of "strong language that is mere rhetoric and hyperbole" thus not defamatory); P*aterson v. Little, Brown & Co.*, 502 F. Supp. 2d 1124, 1135 (W.D. Wash. 2007) ("snitch," "squealer," and "liar," may be considered "abusive opinion," but not actionable as defamation). Whether a statement qualifies as constitutionally protected speech under the First Amendment is a matter of law for the court to decide. *Dubinsky v. United Airlines Master Exec. Council*, 303 Ill. App. 3d 317, 708 N.E.2d 441 (1st Dist. 1999).

Here, plaintiff and defendants have divergent views in a heated debate regarding a matter of public concern that has been and continues to be in the political and public arena. *Colburn v. Trustees of Indiana University*, 973 F.2d 581, 586 (7th Cir. 1992) (noting that "right to work" legislation is matter of public concern); *Harris v. Quinn*, 134 S. Ct. 2618, 2658 (2014) (dissent) ("[f]or many decades, Americans have debated the pros and cons of right-to-work laws... All across the country and continuing to the present day, ***citizens have engaged in passionate argument*** about the issue and have made disparate policy choices."). Both parties have monitored the issue closely and have passionate positions. Greer has followed it so closely that he was able to spot an inconsistent position taken by the Union in the statements made by plaintiff and in the 2007 petition (again an inconsistency never denied by plaintiff and only unconvincingly argued away). Greer uses the terms "lies", "denies a truth" and "kingpins", while plaintiff alleges that the opposing view is "fallacious" and states that certain persons are "free-

riders". Regardless of diction and whether it could be more artful, the language between the parties is equally charged. In any event, Greer's statement is one of rhetoric imputed not solely to plaintiff but to the strategy of the opposition - a strategy that he believes is disingenuous, unsupported by the law and even inconsistently applied by the Unions. *Arthur v. Offit,* 09-CV-1398, 2010 U.S. Dist. LEXIS 21946, *12 (E.D. Va. Mar. 10, 2010)("she lies" rhetorical hyperbole as nature of debate was "rough and tumble" and involved an "emotional and highly charged debate about an important public issue" in which parties had "diametrically opposed views" and readers could expect "emphatic language"); *Farber v. Jefferys*, 33 Misc. 3d 1218(A), 941 N.Y.S 2d 537 (1st Dept. 2011) ("liar" deemed rhetoric in the context of "a heated public debate" and attempt to "discredit rival").

Likewise, plaintiff's inability to avoid arguing his own impassioned opinion through allegations in the complaint – even when said allegations offer no substance to his claim - only reinforces the intense nature of the debate. Against this contextual backdrop, Greer's declaration that the plaintiff, at the bequest of the Union, "lies" or "denied a truth" is not a fact or a personal criticism, but rather an outpouring of exasperation and intellectual outrage directed at the clearly contradictory positions taken by – not plaintiff – but rather the Unions at the oral argument and in the previously filed 2007 petition – contradictory positions that plaintiff does not deny. See, *Steinhilber v. Alphonse*, 68 NY2d 283, 294, 501 N.E.2d 550 (1986) ("[e]ven apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, *heated labor dispute… in which an audience may anticipate epithets, fiery rhetoric or hyperbole.*"). Such statements are protected.

### D. The statements made in the posting are protected by privilege.

A qualified privilege may exist where the situation involves an interest of the person who publishes the defamatory statement or an interest of the person to whom the matter is published. *Tamburo v. Dworkin*, 974 F. Supp. 2d 1199, 1204 (N.D. Ill. 2013). Courts also recognize, as privileged, communications involving a recognized public interest. *Id.*; *See*, *International Admrs., Inc. v. Life Ins. Co.*, 753 F.2d 1373 (7th Cir. 1985) (discussing similar conditional privilege). The qualified privilege serves to

enhance a defamation plaintiff's burden of proof. *Id.* The privilege may protect the speaker from liability regardless of the statement's contents. *Id.* To overcome the privilege, the plaintiff must show not just that the statements were untrue, but that the defendant abused the privilege by intentionally publishing false material or by displaying a reckless disregard as to its truth - meaning that the defendant entertained serious doubts about the truth of the statement but failed to properly investigate the truth. *Id.* A court may determine that as a matter of law insufficient facts are alleged to show an abuse of the applicable qualified privilege. *Id.*

The posting at issue clearly speaks to an issue of public concern, in which author Greer and his organization had an invested interest. The qualified privilege is applicable. Given the substantial truth of the statement and the limited context in which it was made (i.e. a specific position taken by a Union), this Court should find the statements made by Greer privileged as a matter of law.

### E. Plaintiff has not and cannot plead malice, thus precluding suit.

Illinois recognizes both general purpose public figures (i.e. individuals whose status in society makes them public figures for all purposes) and limited purpose public figures. As to limited purpose public figures, a plaintiff must establish actual malice in defamation actions involving controversies in "which they have chosen to accept a leadership role." *Dubinsky v. United Airlines Master,* 303 Ill. App. 3d 317, 337, 708 N.E.2d 441, 456 (1st Dist. 1999). Significantly, in the context of union leadership, the *Dubinsky* court found: "Union officers are generally held to be public figures for purposes of union business where their activities place them in a controversy that invites scrutiny of their integrity, character and professional ability…Indeed, many courts have determined that union *officers or officials* constitute public figures and must show actual malice in defamation actions." *Id.* Likewise, Illinois courts have found that a plaintiff that seeks publicity by advertising and broadcasting is a public figure and does not qualify for the higher level of protection from defamation afforded to private persons. *Televizja USA, Inc. v. EchoStar Corp.,* 2004 U.S. Dist. LEXIS 17936 at *29-30 (N.D. Ill. Sept. 1, 2004).

Here, plaintiff, an attorney for the Union who works in high profile settings and, as alleged in his complaint, "frequently speaks on labor and employment topics at professional conferences throughout the country" (Doc. No. 12 ¶ 3), has defined himself as a public, even national, figure at least for the limited purpose of labor law. Indeed, he has sought publicity for this issue.[5] Thus, he qualifies as a limited purpose public figure and must plead malice. Even if this Court does not deem plaintiff a limited public figure, once, as here, a qualified privilege applies, a communication is only actionable if plaintiff can show actual malice. *Davis v. John Crane, Inc.*, 261 Ill. App. 3d 419, 431-32, 633 N.E.2d 929 (1st Dist. 1994). To establish actual malice, a defamation plaintiff must show that (1) the utterance was false and (2) that it was made with knowledge of its falsity or in reckless disregard of whether it was false or true. *Id.* "Reckless disregard" has been defined as proceeding to publish the defamatory matter despite a high degree of awareness of probable falsity or entertaining serious doubts as to its truth. *Id.* This burden is not satisfied by the bare allegation that a defendant acted maliciously and with knowledge of the falsity; the plaintiff must allege facts from which actual malice may be inferred. *Id.*

Here, plaintiff has not pleaded any allegations showing actual malice, nor can he given that the post correctly reports on his oral argument. Finally, if the speech addresses a matter of public concern plaintiff cannot recover punitive damages absent a showing of actual malice. *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.,* 227 Ill. 2d 381, 395, 882 N.E.2d 1011 (2008). At a minimum, plaintiff's claim for punitive damages must be stricken.

### F. Plaintiff has failed to plead actual harm or special damages.

Illinois courts have found that the inference that someone has lied in his professional capacity may not be sufficient to support a claim of defamation per se when the statement is one of opinion. See, *Vikars-Duncan v. Tactikos*, 2014 ILApp (4th) 131064 at ¶¶ 33-34 (2014). A news report that contains a false statement is actionable "only when 'significantly greater opprobrium' results from the report

---

[5] Bloomberg BNA, Daily Labor Report "Indiana Right-to-Work Law Passes Muster Under Federal Law, Split 7th Circuit Rules." Sept. 2, 2014. Attached hereto as Exhibit F.

containing the falsehood than would result from the report without the falsehood." *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1228 (7th Cir. 1993). Unless the author is deliberately lying or is recklessly indifferent to the truth or falsity of what he says (neither is a plausible hypothesis here), the plaintiff must prove actual, though not necessarily pecuniary, harm in order to recover damages. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 349-50 (1974). Here, plaintiff has not done so.

### G. Plaintiff's claim is a direct violation of the Illinois Citizen's Participation Act and this Court should not only dismiss the claim but award defendants their attorney fees.

The Citizen Participation Act (CPA) 735 ILCS 110/1 *et. seq.*, is designed to protect defendants from what are termed "Strategic Lawsuits Against Public Participation" (SLAPP). A SLAPP plaintiff's goal is achieved not by success on the merits but by forcing defendants to expend funds on attorney fees and litigation costs, thus discouraging them from pursuing their protests. To combat SLAPPs, the Act provides for expedited discovery and hearings on motions to dismiss a case under the Act and awards of attorney fees and costs for successful movants. 735 ILCS 110/20, 25; *Wright Dev. Group, LLC v. Walsh*, 238 Ill. 2d 620, 939 N.E.2d 389 (2010) (finding defendant immune under Act and awarding fees). The public policy behind the Act states that "the constitutional rights of citizens and organizations to be involved and participate freely in the process of government must be encouraged and safeguarded with great diligence." 735 ILCS 110/1.; *Shoreline Towers Condo. Ass'n v. Gassman*, 404 Ill. App. 3d 1013, 936 N.E.2d 1198 (1st Dist. 2010).

For the reasons set forth above, plaintiff's claim has no merit, and is clearly an attempt to retaliate against defendants for their political beliefs and their participation in the governmental process and reporting on said process. This is exactly the type of suit for which the CPA was designed. This Court should dismiss plaintiff's claim and award defendants their attorney's fees and costs. *Goral v. Kulys*, 2014 IL App (1st) 133236, 21 N.E.3d 64 (1st Dist. 2014) (candidate's suit against blogger was meritless and retaliatory, thus, appropriately dismissed under Act).

15

**CERTIFICATE OF SERVICE**

        The undersigned hereby certifies that a true and correct copy of the foregoing Defendants'

Memorandum in Support of Their Motion to Dismiss has been electronically filed with the Clerk of the

United States District Court for the Northern District of Illinois, Eastern Division, by using the CM/ECF

system which will send notification of such filing via electronic delivery to attorneys of record on March

15, 2016.


                                             */s/ John J. Murphy*
                                             John J. Murphy
                                           NIELSEN, ZEHE & ANTAS, P.C.
                                           55 West Monroe – Suite 1800
                                           Chicago, Illinois 60603
                                           312.734.1005 (direct)
                                           312.322.9977 (fax)
                                           Jmurphy@nzalaw.com


Paul Bozych
John J. Murphy
NIELSEN, ZEHE & ANTAS, P.C.
55 West Monroe – Suite 1800
Chicago, Illinois 60603
312.734.1005 (direct)
312.322.9977 (fax)
pbozych@nzalaw.com
Jmurphy@nzalaw.com