## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Dale D. Pierson, | ) | |
| | ) | |
| Plaintiff *Pro Se*, | ) | |
| | ) | Case No. 15-CV-11049 |
| v. | ) | |
| | ) | Judge Ruben Castillo |
| National Institute for Labor Relations | ) | Magistrate Judge Geraldine Soat Brown |
| Research and Stan Greer, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

"Operating Engineers Union Lawyer Flat-Out Lies to Indiana Supreme Court," declared the headline to the September 12, 2014 article published by Defendant National Institute for Labor Relations Research (NILRR) (First Amended Complaint ("FAC") ¶ 12, Ex. A, Doc. # 12, at PageID #73). Under Defendant Stan Greer's byline, the article went on to identify Plaintiff Dale Pierson as the "top lawyer for the other union seeking to overturn Indiana's Right-to-Work law," and asserted that in oral argument to the Indiana Supreme Court, "Pierson flat-out lied." (*id.* at ¶ 12). Defendants' Motion to Dismiss should be denied because there is nothing more defamatory than to assert that a lawyer has lied in open court and their procedural defenses fail.

### STATEMENT OF THE CASE

On September 11, 2015, Plaintiff Pierson filed his Complaint alleging, "defamation *per se,*" in the Circuit Court of Cook County, Illinois (Case No. 15-L-009352). On December 9, 2015, Defendants filed their "Notice of Removal," in this Court (ECF Document #1 (hereafter "Doc. #___"), filed 12/09/15).

In their Notice of Removal, Defendants alleged that "this Court has original jurisdiction over this matter" (Notice ¶ 3, Doc. #1 at PageID #2); and repeatedly asserted that "this Court has jurisdiction over the causes of action and claims asserted in the State Court action" (Notice ¶¶ 8, "Conclusion," Doc. #1 at PageID #3-4). While Defendants continued to contest the propriety of service, they did not contest personal jurisdiction (Notice ¶¶ 2, 9, Doc. #1 at PageID #2-3).

Thereafter, Defendants litigated the case consistent with this Court's rules by *inter alia*: filing appearances (Doc. #3 at PageID #22; Doc. #4 at PageID #23); opposing Plaintiff's Motion to Remand, insisting that "this Court had jurisdiction over this matter" (Response ¶ 2, Doc. #10 at PageID #35); engaging in settlement exchanges (Certification of Dale D. Pierson dated May 9, 2016 ("Pierson Cert."), ¶¶ 16, 22, and Attachment 7); engaging in the preparation of a joint status report (Pierson Cert. ¶¶ 20, 22; Doc. #24, PageID #274-277); and otherwise following this Court's rules with respect to filing and service of their Motion to Dismiss (Pierson Cert. ¶ 21).

## STATEMENT OF FACTS

Plaintiff Pierson is employed as General Counsel to the International Union of Operating Engineers, Local 150, AFL-CIO (Pierson Cert. ¶ 2). He resides and works in Cook County, Illinois, where Local 150's headquarters is located (*id.*). At the direction of the Union, Pierson was principally responsible for preparing the legal challenges to the Indiana Right-to-Work law passed in 2012 (*id.*). After the Indiana trial court found the Right-to-Work law unconstitutional, Pierson argued against the State's appeal in the Indiana Supreme Court (*id.*).

The NILRR is an arm of the National Right-to-Work Committee (NRTWC) (Pierson Cert. ¶ 21). The NILRR maintains a website at which it solicits donations, offers scholarships, and publishes articles (Pierson Cert. ¶¶ 23-24). The website offers what are known as "site tags," including the tags, "Illinois," "Indiana," and "Local 150" (*id.* at ¶ 26 and Attachment 10). The

Illinois tag enables readers to see articles categorized under that tag, which includes the Greer article which is the subject of this lawsuit (*id.* at ¶ 26 and Attachment 10). The NILRR has otherwise done business in Illinois on numerous occasions (Pierson Cert. ¶ 25 and Attachment 9; Declaration of Stan Greer ¶ 15, Doc. #22-1 at PageID #108).

On September 12, 2014, Defendants posted online, an article under the headline, "Operating Engineers Union Lawyer Flat-Out Lies to Indiana Supreme Court" (FAC ¶ 12, Doc. #12 at PageID #68). That article also refers to "a petition filed with the National Labor Relations Board [NLRB] seven years ago" (FAC ¶ 14, Doc. #12 at PageID #68). That petition, filed by the United Steelworkers of America, titled, "In the Matter of Rulemaking regarding Members-Only Minority Union Collective Bargaining," asked the NLRB to adopt a rule that would impose upon employers "a duty to bargain collectively with a labor organization that represents less than an employee-majority with regard to the employees who are its members, but not for any other employees" (Pierson Cert. ¶ 9(b) and Attachment 2). Defendants then said (FAC ¶ 12, Doc. #12 at PageID #68):

> How can it be, then, that Dale Pierson, the top lawyer for the other union seeking the overturn Indiana's Right to Work law judicially, told the Indiana Supreme Court on September 4 that union officials representing only those who join and pay dues "is not a legal possibility"? (A video of the oral arguments in which Pierson claimed again and again that "the law does not allow members-only representation" is available at the end of the link below.)

> The answer is, quite simple, that Pierson flat-out lied.

Greer's article fails to acknowledge that the NLRB denied the petition on August 26, 2011 (FAC ¶ 15, Doc. #12 at PageID #68-69). In asking the NLRB to change existing law to allow minority bargaining, the Steelworkers conceded that such "members only" bargaining was <u>not</u> recognized by the NLRB, and filed the petition, they said, so that employees would be "permitted to return to the exercise of the right to begin organizing and bargaining through unions that

represent their members only." (Pierson Cert. ¶ 9(b) and Attachment 2). The Board denied the petition, in part, because it called for "a significant reinterpretation" of the NLRA (*id.*).

## ARGUMENT

**I.    The Court Should Deny Defendants' Rule 12(b)(2) Motion to Dismiss.**

Under *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010), all well-pleaded facts alleged in the complaint showing personal jurisdiction are taken as true. If Defendant challenges those facts by affidavit or exhibits, plaintiff is entitled to resolution in its favor of all factual disputes. *Perdue Research Foundation v. Sanofi-Synthelavo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003). Plaintiff invoked the jurisdiction of the Circuit Court of Cook County, Illinois (Notice of Removal, Doc. #1-1 at PageID #11). Defendants never challenged personal jurisdiction there, and repeatedly invoked this Court's jurisdiction in removing the case. Defendants, moreover, submitted to this Court's adjudicative process and thereby waived any challenge to personal jurisdiction.

**A.    Defendants Waived Any Right to Challenge this Court's Personal Jurisdiction over Them.**

This Court's exercise of personal jurisdiction over Defendants, non-residents of Illinois, is proper "only if a court of the state in which it sits would have such jurisdiction." *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995). The defense that a federal court lacks personal jurisdiction over a non-resident is, however, waivable. Fed. R. Civ. P. 12(b)(2), (h)(1); *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) ("To waive or forfeit a personal jurisdiction defense, a defendant must give a plaintiff a reasonable expectation that it will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking.").

Defendants waived any personal jurisdiction defense. They raised no challenge in state court, and repeatedly invoked this Court's jurisdiction to support removal (Notice of Removal, Doc. #1, at Page ID #2-3). And while they continued to contest the effectiveness of service (*id.* at ¶ 2, PageID #2), Defendants nowhere in their Notice of Removal, or any of their five filings until their Motion to Dismiss, raised any question of personal jurisdiction.

Absent this waiver, it was error for the Court to assert diversity jurisdiction. *Yassan v. J. P. Morgan Chase & Co.*, 708 F.3d 963, 967 n.1 (7th Cir. 2013), *relying on Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93 (1998). This is so because personal jurisdiction is the "first and fundamental question" resolved, *Steel Co.*, 523 U.S. at 94, inasmuch as it refers to a court's "power to bring a person into its adjudicative process." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). Hence, if the Court finds it has no personal jurisdiction, its only recourse is to remand the case to Cook County. *See, e.g., Telemedicine Solutions, LLC v. Wound Right Technologies, LLC*, 27 F. Supp. 3d 883, 901 and n.4 (N.D. Ill. 2014).

Defendants' subsequent litigation of various issues subjected them to this Court's adjudicative process—conduct which traditionally amounts to a waiver. *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1296-1297 (7th Cir. 1993); *cf., Haedike v. Kodiak Research, Ltd.*, 814 F. Supp. 679, 681-682 (N.D. Ill. 1992) (defendant cannot submit to state court jurisdiction, then upon unwanted removal deny the reach of the federal court's jurisdiction; "Any other result would amount to the countenance of intersystem forum shopping"). Consistent with the Court's directions, Defendants: responded to Plaintiff's settlement demand (Pierson Cert. ¶¶ 16, 22 and Attachment 7); participated in preparation of the required joint status report (*id.* at ¶¶ 20, 22 and Attachment 7); and, submitted their Motion to Dismiss theories to Plaintiff pursuant to this Court's standing order (*id.* at ¶ 21 and Attachment 7). Throughout this time, they did not contest personal

jurisdiction, and thus caused the Court wasted effort in deciding the motion to remand and other work, and misled Plaintiff.

Finally, Defendants have otherwise waived their personal jurisdiction defense by failing to adhere to the requirements of Rule 81(c), Fed. R. Civ. P., and this Court's Order entered January 12, 2016. They did not file their Motion to Dismiss until March 15, 2016 (Doc. #21 at PageID #85)— obviously not "7 days after the notice of removal is filed" (December 16, 2015) as is required by Rule 81(c)(2)(C). Defendants received Plaintiff's FAC—"through service or otherwise"—on January 21, 2016 (Doc. #12 at PageID #65-75). They filed their Motion to Dismiss 54 days later—missing the 21-day deadline of Rule 81(c)(2)(A). Even if the clock started running when Plaintiff served Defendants in Virginia on February 9, 2016, their Motion to Dismiss likewise missed that 21-day deadline, March 1, 2016, as required by Rule 81(c)(2)(B). This failure to "answer or present other defenses" timely waives them.

### B. Defendants Purposefully Availed Themselves to the Jurisdiction of this Court When They Expressly Aimed Their Intentional Tort at Pierson in Illinois.

Intentional tortious conduct calculated to cause injury is generally sufficient to establish the certain "minimum contacts" necessary for the court to exercise personal jurisdiction over an out-of-state defendant. *Calder v. Jones*, 465 U.S. 783, 791 (1984) (California state courts properly exercised personal jurisdiction over Florida author and editor of an allegedly defamatory article distributed in California). The Seventh Circuit has interpreted *Calder* to declare three elements to establish personal jurisdiction: "(1) intentional conduct (or "intentional or allegedly tortious" conduct); (2) expressly aimed at the foreign state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the foreign state." *Tamburo*, 601 F.3d at 703. The Supreme Court has summarized this "express aiming" analysis by observing, "the proper focus of the minimum contacts inquiry in intentional-tort cases is 'the relationship

among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).

In this case, as in *Tamburo*, Pierson alleges the Defendants intentionally published defamatory statements on the NILRR website (FAC ¶¶ 12-13, Doc. #12 at PageID #68). Plaintiff further alleges that, "Defendants made these statements and published them with knowledge of their falsity or reckless disregard for their truth" (*id.* at ¶ 14, Doc. #12 at PageID #68). Defendants' website specifically "tags" articles about Illinois, Indiana, and Local 150 to direct users there, and specifically "tags" the article about Pierson to Local 150 and its members especially in Indiana (Pierson Cert. ¶ 26 and Attachment 10). *See Trans Union LLC v. Credit Research, Inc.*, 142 F.Supp.2d 1029, 1036 n.4 (N.D. Ill. 2001) ("Metatags are embedded code that help internet search engines identify the content of a website."); *see also Black's Law Dictionary* (10th ed. 2014), metatag (1996) ("a hidden keyword for Internet search engines."). By expressly aiming their tortious conduct at Illinois, Defendants have subjected themselves to this Court's jurisdiction.

## II.   The Court Should Deny Defendants' Rule 12(b)(6) Motion to Dismiss.

"A complaint should not be dismissed on a Rule 12(b)(6) motion unless it appears beyond doubt that the plaintiff would be unable to prove a set of facts which would warrant relief." *Quilici v. Second Amendment Foundation*, 769 F.2d 414, 416-417 (7th Cir. 1985). A 12(b)(6) motion admits well-pleaded allegations, and the court reviews those allegations in the light most favorable to plaintiff. *Id.* Illinois law controls a tort claim brought in federal court under diversity jurisdiction. *Id., relying on Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941).

### A.   Pierson Properly Pleads Defamation *Per Se*.

Pierson alleges that defendants posted their September 12, 2014 article intentionally stating he "flat-out lied" to the Indiana Supreme Court, knowing that their statement was false (FAC

¶¶ 12-14, Doc. #12 at PageID #68). Under Illinois law, "a statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him." *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill.2d 1, 10 (1992). "Statements are considered defamatory *per se* when the defamatory character of the statement is apparent on its face; that is, when the words used are so obviously and materially harmful to the plaintiff that injury to his reputation may be presumed." *Id.*

A statement is defamatory *per se* if it falsely imputes an "inability to perform or want of integrity in the discharge of duties of office or employment;" or, "prejudices a person in his profession or trade." *Kolegas*, 154 Ill.2d at 10-11; *Mittelman v. Witous*, 171 Ill. App. 3d 691, 700-701 (1988). In *Kolegas*, statements which implicitly accused a festival promoter of lying and of attempting to deceive a radio station and the public at large "certainly could be found to have damaged [his] integrity and prejudiced him in his business…" 154 Ill.2d at 12. Similarly, newspaper editorials claiming a public official "lied to us" and "lied to [the public]" were libelous *per se* because they imputed to [plaintiff] a want of integrity in discharging the duties of his office." *Costello v. Capital Cities Communications*, 125 Ill.2d 402, 417 (1988); *see also Catalano v. Pechous*, 83 Ill.2d 146, 157-164 (1980) (defendant's statement "240 pieces of silver changed hands" not to be taken literally; it charged aldermen plaintiffs with crime of taking a bribe).

Pierson has practiced labor and employment law, representing unions and employees, for over 33 years (Pierson Cert. ¶ 3; FAC ¶ 3, Doc. #12 at PageID #65). Just as "a statement which implies that a professional promoter is promoting a fictitious event undermines the promoter's credibility with the public and thereby damages his professional reputation," *Kolegas*, 154 Ill.2d at 13, so too does the statement a lawyer "flat-out lied" to the court undermine his credibility to his clients, the public, and the courts, and damages his reputation.

8

### B.  None of the Defenses Raised Apply Here.

#### 1.  Defendants' statements are false.

Section 9(a) of the NLRA requires unions to demonstrate support from a majority of an employer's employees in any given bargaining unit.  29 U.S.C. § 159(a).  Only then is an employer required to bargain with the union as the majority representative of its employees.  *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 614 (1969); *Linden Lumber Division v. NLRB*, 419 U.S. 301 (1974).  It is unlawful for an employer to recognize a union, and for a union to accept recognition, based upon minority support.  *Ladies Garment Workers Union v. NLRB*, 366 U.S. 731 (1961).  And it is unlawful for unions and employers to negotiate contracts covering only union members.  *See, generally, Amicus Curiae* Brief of Professor Kenneth G. Dau-Schmidt filed in *Zoeller v. Sweeney*, Case No. 45S00-1309-PL-00596 (Pierson Cert. ¶ 12 and Attachment 6).

When asked by the Indiana Supreme Court whether unions could represent only their members and thereby avoid the free-rider problem, Pierson said, "the law does not allow members-only representation" (Defendants' Ex. B, Transcript of Proceedings at 29, Doc. #22-2 at PageID #117).  Pierson's answers accurately stated current federal labor law as interpreted and applied by the NLRB and the federal judiciary, and also relied on *Amicus* briefs explaining that "members-only" units are ineffectual under current NLRB law and do not exist in actual workplaces (Pierson Cert. ¶ 12 and Attachments 4-5).

#### 2.  There is no possible innocent construction of Defendants' statement.

In *Chapski v. Copley Press*, 92 Ill.2d 344, 350-351 (1982), the Illinois Supreme Court modified the "innocent construction" rule because "courts generally strain to find unnatural but possibly innocent meanings of words where such a construction is clearly unreasonable and a defamatory meaning is far more probable."  Hence, the Court held (*id.* at 352) (citations omitted):

[A] written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff, it cannot be actionable *per se*.

Flatly asserting a person lied is defamatory *per se* as imputing to that person a want of integrity in discharging the duties of his employment, and "not reasonably susceptible to an innocent construction." *Costello*, 125 Ill.2d at 417; *Kolegas*, 154 Ill.2d at 12-13 (implication a person lied cannot be innocently construed).

Defendants' argument that their "Operating Engineers Union Lawyer Flat-Out Lies to Indiana Supreme Court" article can be innocently construed because it was "not really directed at the plaintiff" (Defendants' Memorandum at 9), is ridiculous. It identifies only Plaintiff "Dale Pierson, the top lawyer" for Local 150 (FAC ¶¶ 12-13, Doc. #12 at PageID #68), and attaches a video of Pierson's argument (*id.*).

Nor is there any reasonable alternative construction offered by Defendants here. Far from pointing out "inconsistent positions" taken by "unions" generally, Greer's article flatly states Pierson "lied to the Indiana Supreme Court" in arguing to it that "the law does not allow members only representation." (FAC ¶ 12, Doc. #12 at PageID #68). Given their natural and ordinary meaning, there is no way to innocently construe these statements. *Kolegas*, 154 Ill.2d at 12-13.

### 3. The assertion that Pierson "flat-out lied" to the Indiana Supreme Court was not protected opinion.

In Illinois, "the fact that a statement is phrased in the form of an opinion does not cloak it with first amendment protection. Even when presented as apparent opinion or rhetorical hyperbole, a statement may constitute actionable defamation." *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 397 (2008). "Statements which <u>can</u> reasonably be construed as asserting facts" are not constitutionally protected opinion. *Kolegas*, 154 Ill.2d at 15 (emphasis

in original).  The assertion that Pierson was lying to the court can only reasonably be construed as asserting facts and is therefore <u>not</u> protected opinion.

Defendants' argument that there has been "heated debate" over Right-to-Work laws is irrelevant (Def. Memo at 11).  Their assertion that "both sides" have taken "passionate positions" (*id.*), likewise has nothing to do with their factual assertion that Pierson lied to the Indiana Supreme Court.  Defendants' effort to recast their assault on Pierson's integrity as merely "spot[ting] an inconsistent position" is itself untrue.  In the Steelworkers' petition to the NLRB, they argued that the law should be <u>changed</u> to allow for members-only bargaining (Pierson Cert. ¶ 9(b) and Attachment 2).  Defendants' admission that Greer "has followed [the issue]…so closely" (Def. Memo at 11) concedes that he knew his assertion Pierson "flat-out lied" was itself false.

### 4.    There is no qualified privilege for Defendants' defamatory statements.

In Illinois, defamation defendants seeking a qualified privilege bear the burden of proving whether the "occasion itself" for the communication in issue "created some recognized duty or interest to make the communication so as to make it privileged."  *Kuwik v. Starmark Star Marketing and Admin., Inc.*, 156 Ill.2d 16, 27 (1993) (adopting Restatement (Second) of Torts).  Defendants argue that "the posting at issue clearly speaks to an issue of public concern in which author Greer and his organization had an invested [sic] interest" (Def. Memo at 13).

This is yet another misstatement.  Defendants and their parent, NRTWC, support state Right-to-Work laws generally.  Their only interest in members-only bargaining is to insist falsely that it exists, in order to counter arguments unions are forced to represent free-riders without compensation.  In any event, that is not an "interest" recognized by Illinois courts as warranting a qualified privilege.  *Kuwik*, 156 Ill.2d at 29 (defendant insurer had legal duty to publish allegedly defamatory material); *International Administrators, Inc. v. Life Ins. of North America*, 753 F.2d

1373, 1382 (7th Cir. 1985) (same); *Tamburo v. Dworkin*, 974 F.Supp.2d 1119 (N.D. Ill. 2013) (dog-breeder's interest in protecting data against hacker who stole then sold data). And, of course, they in no way limited their statements. *Kuwik*, 156 Ill.2d at 29.

### 5. Pierson is not a public figure, limited or otherwise.

Defendants rely exclusively on *Dubinsky v. United Airlines Master Executive Council*, 303 Ill. App. 3d 313 (1999), to assert that union officers and officials are limited purpose public figures (Def. Memo at 13). The cases relied on in *Dubinsky*, however, all involve elected union officers (or in *Dubinsky*'s case, a former elected official whose claims were based on statements relating to his conduct while in office). *Id.* at 321-322, 337. Pierson is not an elected officer (Pierson Cert. ¶ 3), but a lawyer hired by Local 150's elected President-Business Manager (*id.*). None of the cases cited by Defendants stand for the proposition that lawyers advocating positions for their clients assume that role personally.

Defendants argue that Pierson is a limited purpose public figure because he speaks at professional conferences on labor and employment topics and "he has sought publicity for this issue" (Def. Memo at 14). Defendants' sole support for this latter assertion is an article in a limited circulation weekly trade journal which reported on the Seventh Circuit's decision to reject the Union's challenge to Indiana's Right-to-Work law (*id.* at fn.5; Defendants' Ex. F, Doc. #22-7 at PageID #269). That article merely sought comment on the Seventh Circuit's decision from Pierson, who only addressed the Union's options going forward (*id.*). Unlike the plaintiff in *Kisser v. Coalition for Religious Freedom*, ___ F. Supp. ___, 1995 WL 3996 at *1 (N.D. Ill. 1995), who admitted she "injected herself into the fray," Pierson has not sought out publicity or otherwise inserted himself into this controversy other than as a lawyer advancing his client's position.

6.    **Alternatively, the Complaint properly pleads actual malice.**

In *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), the U.S. Supreme Court held that a public official cannot prevail in a libel action without proof their allegedly defamatory statements were made with "actual malice."  Actual malice is defined as "knowledge of [the statement's] falsity or in reckless disregard of whether it was true or false."  *Catalano*, 83 Ill.2d at 155.  It is this "actual malice" proof which is also required of limited public figures and to overcome claims of privilege.  *See, e.g., Kuwik*, 156 Ill.2d at 24-25.

Pierson alleges that Defendants made the statement he "flat-out lied" on their website "with knowledge of their falsity or reckless disregard for their truth" (FAC ¶ 14, Doc. #12 at PageID #68).  Defendants know that Pierson was not lying when he called minority/members-only bargaining a "legal impossibility," because they relied in their article on the very petition brought to the NLRB to <u>change</u> the law to allow minority members-only bargaining (FAC ¶ 15, Ex. A, Doc. #12 at PageID #68-69; Doc. #12-1 at PageID #73).  In rejecting it, the NLRB said again that to permit members-only bargaining would require a "significant reinterpretation" of the NLRA (*id.*; Pierson Cert. ¶ 9(b) and Attachment 2).

The NLRB's Decision on August 26, 2011, is fully consistent with its previous decisions rejecting the "members-only minority bargaining" issue.  *See., e.g., Dick's Sporting Goods*, Case No. 6-CA-34821 (June 22, 2006) ("The essence of industrial democracy, as contemplated and enforced by the [NLRA], is fundamentally based on majoritarian principles."); (Pierson Cert. ¶ 9(b) and Attachment 1 at p. 18).  The parties and various *amici* fully presented this jurisprudence to the Indiana Supreme Court (Pierson Cert. ¶ 12 and Attachments 4, 5, 6), all of which was certainly known to Defendants.

### 7. Defendants conceded Pierson plead actual and/or special damages when they relied on his allegations to establish diversity jurisdiction.

In their Notice of Removal filed December 9, 2015, Defendants asserted that this Court has diversity jurisdiction over the parties in part because "Plaintiff specifically quantifies the amount of damages as in excess of $50,000.00 with punitive damages in excess of $500,000.00." (Notice of Removal ¶¶ 7-8, Doc. #1 at PageID #3). Defendants cannot now assert in their Motion to Dismiss—where all well-pled facts must be taken as true—that Pierson has not adequately pled special damages.

### III. Defendants State No SLAPP Claim.

Defendants have offered nothing to show that dismissal is appropriate under the Illinois Citizen Participation Act, 735 ILCS 110/1, *et seq.* ("SLAPP"). As set forth in *Goral v. Kulys*, 21 N.E.3d 64, 75 (2014) (internal citations omitted), three requirements must be met to dismiss a SLAPP lawsuit:

> (1) the defendant's acts were in furtherance of their right to petition, speak, associate, or otherwise participate in government to obtain favorable government action; (2) the plaintiff's claims are solely based on, related, or in response to the defendant's 'acts in furtherance;' and, (3) the plaintiff fails to produce clear and convincing evidence that the defendant's acts were not genuinely aimed at solely procuring favorable government action.

Illinois courts have found that articles written concerning a political or public process such as an election further an individual's right to speak and participate in government. *Id.* at 76. But even if Defendants' article attempted to influence the Indiana Supreme Court as an effort to "speak and participate in government," they must show that the lawsuit is meritless and retaliatory. As discussed at length above, it cannot be found that Pierson's suit is as a matter of law meritless. Nor can it be held to be retaliatory. To determine whether a lawsuit is "retaliatory," under SLAPP, courts look to the proximity in time between protected activity and the complaint and whether the

damages requested are reasonably related to the facts alleged in the complaint and are a 'good faith estimate of the extent of the injury sustained. *Id.* at 80 (internal citations omitted). There is nothing suspect about Pierson's filing suit within the statute of limitations provided by law. Likewise, Plaintiff has not alleged monumental seven-figure damages that might lead a court to conclude his suit is retaliatory in nature, but only a modest sum designed to compensate him for the damage to his professional reputation. *Id.* (internal citations omitted). Nor can Defendants' defamatory statements be construed as aimed "solely at procuring favorable government action" when Defendants impugned Pierson's professional integrity and credibility by publishing a false statement that he "flat-out lied" to the Indiana Supreme Court. Defendants' Motion to Dismiss this case as a SLAPP action must fail.

## <u>CONCLUSION</u>

For all the above-stated reasons, Plaintiff Pierson respectfully requests the Court to deny Defendants' Motion to Dismiss in its entirety; or, alternatively, remand the case to the Circuit Court of Cook County, Illinois.

Dated: May 9, 2016                              Respectfully submitted,

                                               By: /s/ Dale D. Pierson
                                               Plaintiff *Pro Se*

Dale D. Pierson *(dpierson@local150.org)*
Local 150 Legal Department
6140 Joliet Road
Countryside, IL  60525
Ph. 708/579-6663
Fx. 708/588-1647

15

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned, an attorney of record, hereby certifies that on May 9, 2016, he electronically filed the foregoing Response with the Clerk of Court using the CM/CM/ECF system, which sent notification to the following:

Mr. Paul Bozych, *(Paul.Bozych@wilsonelser.com)*
Mr. John J. Murphy *(Jack.Murphy@wilsonelser.com)*
Wilson Elser Moskowitz Edelman & Dicker, LLP
55 West Monroe Street, Suite 3800
Chicago, IL  60603

/s/ Dale D. Pierson
Plaintiff *Pro Se*

Dale D. Pierson *(dpierson@local150.org)*
Local 150 Legal Department
6140 Joliet Road
Countryside, IL  60525
Ph. 708/579-6663
Fx. 708/588-1647