UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DALE PIERSON | ) | |
| | ) | |
| Plaintiff, | ) | Hon. Ruben Castillo |
| vs. | ) | Magistrate Judge Geraldine Soat Brown |
| | ) | |
| NATIONAL INSTITUTE FOR LABOR | ) | 15 CV 11049 |
| RELATIONS RESEARCH AND STAN GREER | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

### I. DEFENDANTS HAVE NOT WAIVED THEIR CHALLENGE TO PERSONAL JURISDICTION

Plaintiff's argument regarding waiver can be disposed of quickly. There is simply no basis in law to support Plaintiff's position that Defendants have waived their respective objections to personal jurisdiction. Indeed, the few cases cited by Plaintiff, at best, are inapplicable and, at worst, do not even stand for the propositions for which they are cited.

In any event, Defendants will briefly address the procedural posture of this case, as Plaintiff's version is misleading. Defendants timely removed this case to federal court pursuant to 28 U.S.C. §§ 1332, 1441(a) and 1446. (Doc. No. 1). As indicated in their removal petition, Defendants had not been properly served. On December 14, 2015, this Court dismissed Plaintiff's complaint without prejudice to the filing of a timely motion to remand or the filing of a properly amended federal complaint. (Doc. No. 6). The Court also encouraged the parties to exhaust all settlement possibilities. On January 7, 2016, Plaintiff filed a motion to remand.

(Doc. No. 8). Defendants, who were still not served, filed a response. (Doc. No. 10). This Court denied the motion to remand on January 12, 2016 and instructed that the Defendants would have 21 days to answer or otherwise plead *once* they had been properly served. (Doc. No. 11). On January 21, 2016, Plaintiff filed his amended complaint and issued summonses to the Defendants. (Doc. No. 12).

Defendants were served on or around February 9, 2016. Thereafter, and prior to the due date of their responsive pleading, Defendants sought an extension of time to answer or otherwise plead. (Doc. No. 16). The extension was agreed to by Plaintiff and granted by this Court. (Doc. No. 18). This Court further directed the parties to prepare a joint status report.

On March 10, 2016, pursuant to this Court's standing order, Defendants sent a communication to Plaintiff explaining the bases for their motion to dismiss. (Doc. No. 21, Exh. 1). This letter clearly states that Defendants were seeking dismissal under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Defendants filed their motion to dismiss on March 15, 2016. (Doc Nos. 21 and 22). Parties also filed a FRCP 26(f) Report on March 21, 2016 pursuant to this Court's prior order. (Doc. No. 24). The Report also indicates that Defendants would be contesting personal jurisdiction.

Other than the limited discovery regarding personal jurisdiction ordered by this Court[1], parties have engaged in no discovery. Settlement discussions consisted of Plaintiff making a demand which Defendants quickly rejected as excessive and unreasonable.

Plaintiff's suggestion that Defendants waived the right to assert a personal jurisdiction defense under Federal Rules of Civil Procedure 12(h)(1) by removing this case to federal court

---

[1] Notably, Plaintiff alleges in his affidavit that Defendants failed to completely answer his jurisdictional discovery. Defendants deny such claim. Plaintiff issued two sets of interrogatories, notably to defense counsel's prior firm. Nevertheless, Defendants received the discovery and answered both sets of interrogatories in a timely fashion in one document, which it served on Plaintiff on April 25, 2016. Defendants deny receiving any further discovery from Plaintiff, and they have not received any communication from Plaintiff regarding this purported discovery.

2

fails as a matter of law. *Benda v. Per-Se Techs., Inc.,* 2004 U.S. Dist. LEXIS 11127, *8, 2004 WL 1375361 (N.D. Ill. June 16, 2004); See *Allen v. Ferguson*, 791 F.2d 611, 614 (7th Cir. 1986). Plaintiff erroneously conflates two jurisdictional concepts by arguing that Defendants' assertion in their petition that this Court has "original jurisdiction over this action pursuant to 28 U.S.C. § 1332" constitutes an admission of personal jurisdiction. Section 1332 governs subject matter jurisdiction not personal jurisdiction. Plaintiff's argument, which is completely at odds with the aforementioned case law that clearly permits a party to challenge personal jurisdiction after removal, has been flatly rejected. *Roberts v. Owens-Corning Fiberglass Corp.*, 101 F. Supp. 2d 1076, 1080-1081 (S.D. Ind. 1999) (argument that party admitted to this Court's jurisdiction when it joined petition for removal from the state court which alleged that this Court "would have original jurisdiction over this action pursuant to 28 U.S.C. § 1332" error, and party permitted to challenge jurisdiction).

Likewise, Plaintiff errs in his position that Defendants waived personal jurisdiction by filing a response to his motion to remand, a motion for extension of time, receiving and rejecting a settlement offer and filing a joint status report – the latter two pursuant to this Court's order. A party only waives the right to move to dismiss for lack of personal jurisdiction if it first makes a different motion under Rule 12 of the Federal Rules of Civil Procedure before it makes a Rule 12(b)(2) motion. See Fed. R. Civ. P. 12(g)(2), (h)(1). Limited and early participation in the litigation process does not create an expectation that a party would "defend the suit on the merits," and it cannot be deemed a waiver of said party's right to challenge personal jurisdiction or venue. *Jackson v. N'Genuity Enters.*, 2014 U.S. Dist. LEXIS 119778, *6 (N.D. Ill. Aug. 28, 2014).

None of Defendants' preliminary actions have been deemed by any Court as a waiver of personal jurisdiction. See, *Swanson v. City of Hammond*, 411 Fed. Appx. 913, 915-916 (7th Cir. 2011) ("[Plaintiff] also argues that the defendants waived their objections to personal jurisdiction when they moved for an extension of time to file their responsive pleading. Not so."); *Rentz v. Swift Transp. Co*., 185 F.R.D. 693, 698, 44 Fed. R. Serv. 3d (Callaghan) 273 (M.D. Ga. 1998) (noting that defendant's filings in connection with motion to remand were not responsive pleadings and thus, did not waive personal jurisdiction); *Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt*., 364 F.3d 884, 888 (7th Cir. 2004) (extensive settlement discussions and response to discovery requests did not waive personal jurisdiction, noting that "considerations of economy argue against the filing of motions while parties are trying to reach a settlement.")

Here, Defendants objected to personal jurisdiction in their initial motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure without having conducted any discovery – other than the limited jurisdictional discovery reluctantly permitted by this Honorable Court. Under no circumstances can this be deemed a waiver.

Finally, Defendants will only briefly address the last two arguments made in this section as they are entirely unsupported by case law or the procedural posture of this case. Citing to *Telemedicine Solution, LLC v. Wound Right Technologies*, LLC, 27 F. Supp. 3d 883, 901 (N.D. Ill. 2014), Plaintiff argues that in the event that the Court finds that it has no personal jurisdiction, it should remand the case to Cook County. There is simply no basis for this assertion in the *Telemedicine* court ruling. In diversity cases, a federal court has personal jurisdiction over the parties only if a court in the state in which the federal court sits would have such jurisdiction. *Bon Dente Joint Venture v. Pasteurized Eggs Corp*., 2002 U.S. Dist. LEXIS 10477, *5, 2002 WL 1285805 (N.D. Ill. June 7, 2002). In fact, because a difference could exist

4

between federal due process guarantees and Illinois due process guarantees, courts must consider whether their exercise of personal jurisdiction satisfies both the federal and state due process guarantees. *Commerce Trust Co. v. Air 1st Aviation Cos.*, 366 Ill. App. 3d 135, 141, 851 N.E.2d 131, 136 (1st Dist. 2006). As such, a federal court's decision regarding personal jurisdiction is entitled to res judicata in a state court and vice versa. *Castolite Co. v. Michigan N. R. Co.*, 87 F.R.D. 748, 749-750 (N.D. Ill. 1980) (res judicata from state court action barred reasserting personal jurisdiction in federal court); *in turn*, *Transamerica Trade Co. v. McCollum Aviation, Inc.*, 98 Ill. App. 3d 430, 424 N.E.2d 740 (4th Dist. 1981) (since the federal court was presented with the issue of personal jurisdiction, we find the issue was entitled to res judicata).

Plaintiff's final contention that somehow Defendants waived personal jurisdiction under Rule 81 of the Federal Rules of Civil Procedure, a rule that has no bearing on personal jurisdiction, is somewhat confusing. It is not clear if Plaintiff is arguing that Defendants should have filed their responsive pleading seven days after removal (though they had not been served and despite this Court's rulings requiring re-pleading) or 21 days after being served despite their timely request for a motion to extend. Regardless, there is no basis for it, and Plaintiff again relies on a misleading version of the procedural posture of this case. Defendants followed proper procedure, and Plaintiff's argument to the contrary is not supported by law or the prior orders of this Honorable Court.

## II. THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER DEFENDANTS

Plaintiff appears to concede that general jurisdiction does not exist as his response fails to address general jurisdiction. Rather, Plaintiff bases his legal argument on the express aiming test as set forth in *Tamburo v. Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010), a case that is limited to the Seventh Circuit's approach to specific jurisdiction.

5

In any event, Plaintiff's reliance on *Tamburo* is curious given the fact that its validity has been questioned after the United States Supreme Court's decision in *Walden v. Fiore*, 134 S. Ct. 1115 (2014). See, *NTE LLC v. Kenny Constr. Co*., 2015 U.S. Dist. LEXIS 142686, *7 (N.D. Ill. Oct. 21, 2015) (finding that the approach in *Tamburo* is "likely no longer good law" after *Walden*). Post *Walden*, the Seventh Circuit has emphasized that the central question is not whether the plaintiff experienced a particular injury or effect in a certain forum, but whether the defendant's conduct connects him to the forum in a meaningful way. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc*., 751 F.3d 796, 802 (7th Cir. 2014), as corrected (May 12, 2014) ("[A]fter *Walden* there can be no doubt that 'the plaintiff cannot be the only link between the defendant and the forum.'")

Plaintiff's response utterly fails to show that Defendants' conduct in this litigation possesses any meaningful connection to Illinois other than the fact that Plaintiff, who clearly practices in forums across the country, happens to reside in Illinois. Here, the posting at issue reports on an event that occurred in Indiana involving legislation impacting Indiana citizens. It does not report on Illinois or reference Illinois at any point. While Plaintiff happens to be an Illinois resident, this is not stated in the posting. Plaintiff is merely the "Union Attorney" acting on its behalf in Indiana. The posting reports on an issue affecting "Hoosier employees."

Moreover, Plaintiff's argument regarding meta tags is convoluted, not fleshed out and somewhat contradictory. Plaintiff argues that because the website purportedly tags Illinois, Indiana and Local 150—tags which are just content identifying code—it is aimed at Illinois. First, Plaintiff has no foundation to make such a statement nor does his Affidavit suggest he has any experience in computer code. Second, the only tags Defendants see in the exhibits attached by Plaintiff are "Indiana," "Indiana Supreme Court," "IUOE Local 150" (IUOE stands for

6

*International* Union of Operating Engineers), "members only bargaining," and "Right to Work." There are no "Illinois" tags. There are certainly no tags for "Dale Pierson." Third, even assuming there were such tags and that search engines used such tagging–Google, for example, denies its use[2]–it is unclear how Plaintiff's argument pans out. Given that the tags merely identify website content, it is unclear how the tag is somehow directly aimed at Illinois, exploits the Illinois market or creates a meaningful relationship with Illinois and/or its residents.

Defendants do not deny the content of their website or that it can be accessed by the public. Indeed, the cases cited by Defendants in their Memorandum specifically deal with websites that were "highly interactive" and accessible to "anyone, anywhere." Nevertheless, the respective plaintiffs could not meet their burdens "simply by showing that the defendant maintained a website accessible to residents of the forum state and alleging that the defendant caused harm through that website." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A*., 623 F.3d 440, 446 (7th Cir. 2010); *Bittman v. Fox*, 2015 U.S. Dist. LEXIS 127272, *19-20 (N.D. Ill. Sept. 23, 2015) ("In the end, [the plaintiff's] case for personal jurisdiction over [the defendant] boils down to the undisputed allegations that he republished and commented upon information concerning an Illinois resident employed by an Illinois library on a subject-specific watchdog website that is accessible by anyone, anywhere.") Even assuming that the meta tags at issue somehow made the site more accessible to Illinois residents (an extremely questionable assumption that Defendants, quite frankly, do not comprehend), the accessibility is irrelevant. Plaintiff cannot show that content identifying terms in a website's code create personal jurisdiction, especially when his name is not even one of those content defining terms.

---

[2] See, https://webmasters.googleblog.com/2009/09/google-does-not-use-keywords-meta-tag.html. Google's webmaster explains that it does not use key words meta tags in search functions, including specific names.

7

Fourth and final, Plaintiff's own argument as to the tags negates his position that personal jurisdiction is proper in Illinois. Plaintiff's reliance on the meta tags is confusing given his acknowledgement that "Defendants' website specifically 'tags' articles about Illinois, Indiana, and Local 150 to direct users there, and specifically 'tags' the article about Pierson to Local 150 and its members *especially in Indiana.*" (Doc No. 26, p. 7). While the import of Plaintiff's statement is unclear, it appears that Plaintiff inadvertently acknowledges Indiana as the prominent forum in the matter.

In sum, this Court cannot exercise personal jurisdiction over Defendants. The article at issue specifically addresses an Indiana statute argued in the highest court of Indiana. Plaintiff's response fails to address the myriad of cases cited by Defendants demonstrating that personal jurisdiction is improper. Likewise, other than indicating he resides in Illinois, Plaintiff fails to demonstrate a meaningful connection between Defendants and Illinois.

### III.  THE DEFAMATION COUNT CAN BE DISMISSED PURSUANT TO 12(b)(6)

#### A. The statements made in the posting at issue are substantially true.

Plaintiff never addresses the crux of Defendants' argument as to their basis for dismissal. First, Defendant Greer is not attacking Plaintiff in his posting but rather pointing out an inconsistent position that has been maintained by unions in their various advocacy efforts. Defendant Greer specifically points out the inconsistent positions maintained by the Unions in the 2007 Petition and the oral advocacy of Plaintiff, an agent of one Union. Once again, Plaintiff never denies the content of the 2007 Petition and his oral statement. Plaintiff never denies, nor can he, that he stated that it is a "legal impossibility" for a Union to represent only those who join and pay dues. He never denies that the 2007 Petition maintained a position to the contrary. Doc. No. 22, Exhibit D, pp. 30-31. Thus, "lied" is substantially true and highlights the irritation

Defendant Greer felt at the blatantly contradictory positions maintained by the Union. Again, even the Indiana Supreme Court expressly questioned and disagreed with Plaintiff's statements made at oral argument. *Zoeller v. Sweeney*, 19 N.E.3d 749, 753, 2014 Ind. LEXIS 893 (Ind. 2014)[3]. Plaintiff purposefully avoids addressing these salient facts.

### B. The statements in the posting are subject to innocent construction.

Plaintiff ignores law that requires that Illinois courts adopt an innocent construction if reasonable. Here, the criticism of the post is a sweeping indictment of all Union persons for their blatant inconsistencies. Plaintiff insists that the post focuses solely on him, but read in its entirety, the posting clearly attacks the Union strategy – more specifically the Union leaders, "USW brass," "fellow assailants," "paymasters" and "Local 150 kingpins" who signed off on the "strategy." The post refers to "he and the IUOE bosses for whom he is working," in other words, not just Plaintiff. In *Chicago City Day Sch. v. Wade*, 297 Ill. App. 3d 465, 697 N.E.2d 389 (1st Dist. 1998), a radio host criticized actions of a private school for tearing down a landmark, offering a sweeping indictment against various officials, including that they were "just flat lying." The Court found that while it was reasonable to conclude the host was speaking about school officials and even government officials, the context was not defamatory per se and could be innocently construed. Here, the "lie" referred to in the post can be attributed to the unnamed Union "brass" for whom Plaintiff works.

### C. The statements in the posting are constitutionally protected opinion.

Despite Plaintiff's insistence that the term "lie" is inherently defamatory, courts across the country, including Illinois, recognize instances in which the term is not defamatory in the

---

[3] The following passage shows Plaintiff's inability to demonstrate to the Court that "members only" bargaining is not permissible: JUSTICE RUCKER: Can you cite me a United States Supreme Court decision that says that these members only representations are prohibited? MR. PIERSON: I think, your Honor, that a flat decision with that statement is difficult to come by, we've pretty much exhausted the case law in our briefs, but I think it's partly because it is just so well settled that no one even contests it." It is not surprising that the Unions acknowledged that "members only" bargaining was permissible in their 2007 Petition.

given context and, in doing so, implicitly acknowledge the subjective nature of what can reasonably be deemed a colloquial term. *Paterson v. Little, Brown & Co.*, 502 F. Supp. 2d 1124 W.D. Wa. 2007 (liar can be opinion); See e.g., *Anderson v. Woods*, 2008 U.S. Dist. LEXIS 47594, *23-24, 2008 WL 2440226 (S.D.N.Y. June 12, 2008) (though not in defamation context, the court "appreciates" that term "lied […] may have been colloquial"). Though there may be more artful, less knee jerk, reactions to a statement that prompts irritation or appears to its interpreter to be error, it is not defamation per se and is protected opinion.

Once again, Plaintiff fails to read the article in its entirety, fails to recognize the context and tone of the posting and fails to acknowledge that, given this tone, "liar" is rhetoric and similar to the cases cited by Defendants in their memorandum. Again, while perhaps not the most couth of terms, "liar" and/or "lie" find their way into heated arguments with frequency. Plaintiff's response does not deny that the right to work issue is heated[4] (nor can he) and that he and Defendants have diametrically opposed views. He merely dismisses the intensity of the debate concluding that it does not matter. However, just as Plaintiff's impassioned position on the right to work issue manifests itself on the face of his complaint and in his affidavit attached to his response, the same can be said of Defendants in the post at issue. Defendant Greer's declaration that the Plaintiff, at the bequest of the Union, "lies" or "denied a truth" is exasperation and intellectual outrage akin to Plaintiff's criticisms of persons against right to work laws as "free riders" or persons intent on "lining their own pockets." (Doc. No. 26-1, para. 6 and 7); See, *Steinhilber v. Alphonse*, 68 NY2d 283, 294, 501 N.E.2d 550 (1986) ("[e]ven

---

[4] The Right to Work bill in Indiana led to "an historic 37-day walkout, which created the longest legislative shut down in US history." *House Democrats Return from Their Illinois Vacation*, Peter Heck's Liberty Tree, April 2, 2011, available at http://www.peterheck.com/libtree/liberty_tree/?y=2011&m=4. "The only bill killed by the boycott was a 'right-to-work-proposal . . . .'" Deanna Martin, *Indiana Dems return after "softening" GOP agenda*, Associated Press, March 29, 2011, available at
http://archive.boston.com/news/education/k_12/articles/2011/03/29/indiana_dems_return_after_softening_gop_agenda/.

10

apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, *heated labor dispute*… in which an audience may anticipate epithets, fiery rhetoric or hyperbole.").

Plaintiff fails to tackle the argument that the Union has taken inconsistent positions in the 2007 Petition and his oral argument. This exposes the Union and Plaintiff, as their representative, to accusations of, at a minimum, inconsistency and even untruthfulness. Plaintiff has few qualms about throwing mud upon persons or organizations that disagree with the Union's position by calling them free riders, equating them to "right wing political organizations," "White Supremacist extremists," and groups intent on hamstringing civil rights and lining their own pockets. For Plaintiff, opposing positions are a fallacy or "antiunion propaganda." (Doc. No. 26-1). Though Plaintiff is permitted to vent with heated (arguably demeaning attacks), apparently an attack on the Union's clear discrepancy in a matter of public concern constitutes defamation. The idiom "you can dish it out, but can't take it," comes to mind. Regardless, given the context, the posting's statements are protected.

### D. The statements made in the posting are protected by privilege.

Defendants do not fully comprehend Plaintiff's argument against privilege. In any event, Plaintiff fails to address Defendants' position, clearly supported by the record and his own admissions, that the post and its allegedly defamatory statements involve a matter of public concern in which both parties have a vested interest. Thus, the statements are subject to privilege. Rather, Plaintiff attacks Defendants for insisting falsely that members-only bargaining exists. Then, Plaintiff abruptly concludes that no privilege applies. This is error. Defendants are entitled to the defense, which dictates that this claim be dismissed.

### E. Plaintiff has not and cannot plead malice, thus precluding suit.

In his complaint and prior motions, Plaintiff portrayed himself as a prominent figure representing his Union across the country. Recognizing that such a portrayal makes him, at a minimum, a limited purpose public figure, he now backtracks. However, it is clear that Plaintiff is a limited purpose public figure for this matter, and therefore, he must plead malice.

Plaintiff argues that *Dubinsky v. United Airlines Master,* 303 Ill. App. 3d 317, 337, 708 N.E.2d 441, 456 (1st Dist. 1999) is distinguishable because he is not an elected official. However, the *Dubinsky* court's finding that the Union officials at issue were limited public figures does not turn on the fact that they were elected. Rather, the analysis turns on whether the defamation action is related to a "public controversy" for which the limited figure has "chosen to accept a leadership role." *Id*. at 336. The court states: "Because plaintiffs were representatives of the union members at large, comment and criticism of their role in this process were certainly reasonable and to be expected." *Id*.

Plaintiff cannot deny that he is a representative who accepted a leadership role in a matter of public concern. He further cannot deny that he has advertised himself in this role and sought publicity (even if he now claims it was minimal). Indeed, Plaintiff alleged in his complaint that he "frequently speaks on labor and employment topics at professional conferences throughout the country." (Doc. No. 12 ¶ 3). He has defined himself as a public, even national, figure at least for the limited purpose of right to work laws and collective bargaining.

### F. Plaintiff has failed to plead actual harm or special damages.

Again, Plaintiff does not respond to Defendants' specific argument. Rather he chooses, somewhat confusingly, to argue for the Union's position on the right to work issue. The inference that someone has lied in his professional capacity may not be sufficient to support a claim of defamation per se when the statement is one of opinion. See *Vikars-Duncan v.*

12

*Tactikos*, 2014 ILApp (4th) 131064 at ¶¶ 33-34 (2014). A news report that contains a false statement is actionable "only when 'significantly greater opprobrium' results from the report containing the falsehood than would result from the report without the falsehood." *Haynes v. Alfred A. Knopf, Inc*., 8 F.3d 1222, 1228 (7th Cir. 1993). Unless the author is deliberately lying or is recklessly indifferent to the truth or falsity of what he says (neither is a plausible hypothesis here), the plaintiff must prove actual, though not necessarily pecuniary, harm in order to recover damages. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 349-50 (1974).

Here, Plaintiff has not alleged that he suffered a pecuniary harm. Nor can he show that the post shows a reckless indifference to truth. As set forth above, the post accurately stated the Union's position in the 2007 Petition and in the Indiana Supreme Court oral argument over the right to work act. Plaintiff never adequately responds.

### G. Plaintiff's claim violates the Citizen Participation Act.

For the reasons set forth above, Plaintiff's claim has no merit and is clearly an attempt to retaliate against Defendants for their political beliefs, participation in the governmental process and reporting on said process. Plaintiff's argument that he only seeks the "modest" sum of $500,000.00 dollars and punitive damages for the damage to his reputation is nonsensical. Not only has Plaintiff failed to articulate his damages with any specificity, but there is absolutely nothing "modest" about a half million dollar pay-out, not to mention the additional punitive damages. This is exactly the type of suit for which the Citizen Participation Act was designed to protect against. Defendant National Institute for Labor Relations Research, a not for profit entity with a vested interest in matters of public concern, and Stan Greer, its Senior Research Associate, correctly, though perhaps bitingly, questioned an inconsistent position regarding a public matter maintained by another prominent party (the Union) before a governmental body

13

and is then sued for it. This Court should dismiss Plaintiff's claim and award Defendants their attorney's fees and costs. *Goral v. Kulys*, 2014 IL App (1st) 133236, 21 N.E.3d 64 (1st Dist. 2014) (candidate's suit against blogger was meritless and retaliatory, thus appropriately dismissed under the Act).

Respectfully Submitted,

   */s/ John J. Murphy*
John J. Murphy

Paul Bozych
John J. Murphy
NIELSEN, ZEHE & ANTAS, P.C.
55 West Monroe – Suite 1800
Chicago, Illinois 60603
312.734.1005 (direct)
312.322.9977 (fax)
pbozych@nzalaw.com
Jmurphy@nzalaw.com
*Attorneys for Defendants NILRR and Greer*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoingDefendants' Reply in Support of Their Motion to Dismiss has been electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division,by using the CM/ECF system which will send notification of such filing via electronic delivery to attorneys of record on May 24, 2016.

*/s/ John J. Murphy*
John J. Murphy
NIELSEN, ZEHE & ANTAS, P.C.
55 West Monroe – Suite 1800
Chicago, Illinois 60603
312.734.1005 (direct)
312.322.9977 (fax)
Jmurphy@nzalaw.com

Paul Bozych
John J. Murphy
NIELSEN, ZEHE & ANTAS, P.C.
55 West Monroe – Suite 1800
Chicago, Illinois 60603
312.734.1005 (direct)
312.322.9977 (fax)
pbozych@nzalaw.com
Jmurphy@nzalaw.com