UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DALE PIERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 15 C 11049 |
| | ) |
| | ) Chief Judge Rubén Castillo |
| NATIONAL INSTITUTE FOR LABOR | ) |
| RELATIONS RESEARCH AND STAN | ) |
| GREER, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Dale D. Pierson ("Plaintiff") brings this diversity action against the National Institute for Labor Relations Research ("NILRR") and Stan Greer ("Greer") (collectively, "Defendants") alleging defamation under Illinois law. (R. 12, Second Am. Compl.) Defendants move to dismiss these claims pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (R. 21, Mot.) For the reasons stated below, the Court grants Defendants' 12(b)(2) motion to dismiss and dismisses this lawsuit without prejudice to refiling in a court that has personal jurisdiction over Defendants.

## RELEVANT FACTS

Plaintiff is a resident of Cook County, Illinois, and a licensed attorney currently employed as general counsel to Local 150 of the International Union of Operating Engineers, AFL-CIO, headquartered in Countryside, Illinois. (R. 12, Second Am. Compl. ¶ 2.) Defendant NILRR is "a non-profit research facility analyzing and exposing the inequities of compulsory unionism." (*Id.* ¶ 4.) NILRR's principal office is in Springfield, Virginia. (*Id.*) Defendant Stan Greer is a "Senior Research Associate" for NILRR and is a citizen of Virginia. (*Id.* ¶ 5; *see also* R. 22-1, Ex. A to Mem., Greer Dec. ¶¶ 2-3; R. 1, Notice of Removal ¶ 5.)

Plaintiff's claims arise out of remarks made during the course of a series of lawsuits challenging Indiana's "Right-to-Work" law. (R. 12, Second Am. Compl.) Shortly after the State of Indiana passed its Right-to-Work law in 2012, Plaintiff served as lead counsel in a lawsuit challenging the law. Chief Judge Philip Simon of the U.S. District Court for the Northern District of Indiana described Right-to-Work legislation as:

> The "Right to Work" label has a nice sound to it, but is misleading. What these types of laws actually prohibit are "union security clauses," which are provisions in collective bargaining agreements between labor unions and employers that condition employment on a worker joining the union. In addition, such clauses permit, as a substitute for union membership, requiring the payment of fees to the union or, in the case of religious objection, making a substitute payment to a charitable organization. So it's not as if prior to the law's enactment certain people in Indiana were prevented from working and the law suddenly gave them the "Right to Work." Rather, it simply prevents forced union membership.

*Sweeney v. Daniels*, 2:12CV-81-PPS/PRC, 2013 WL 209047, at *1 (N.D. Ind. Jan. 17, 2013). The district court dismissed the suit without prejudice because, among other determinations, it found that Indiana's Right-to-Work law is not preempted by the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(3), and the plaintiffs had failed to state a valid equal protection claim. *Sweeney*, 2013 WL 209047, at *6-12. The U.S. Court of Appeals for the Seventh Circuit affirmed the district court's dismissal. *Sweeney v. Pence*, 767 F.3d 654 (7th Cir. 2014).

While the appeal was pending, the union plaintiffs refiled their claims in Lake County, Indiana. (R. 12, Second Am. Compl. ¶ 7.) On September 5, 2013, the Lake County Superior Court denied the State of Indiana's motion to dismiss and "found the Right-to-Work law unconstitutional under . . . the Indiana Constitution." (*Id.*) The Attorney General of Indiana appealed that decision to the Indiana Supreme Court. (*Id.*) On September 4, 2014, the Indiana Supreme Court heard oral argument in the aforementioned appeal. (*Id.* ¶ 11.) Plaintiff argued before the Indiana Supreme Court in opposition to the appeal. (*Id.* ¶¶ 6-11.) Ultimately, the

2

Indiana Supreme Court reversed the lower court and held that the Right-to-Work law did not violate the Indiana Constitution. *Zoeller v. Sweeney*, 19 N.E.3d 749 (Ind. 2014).

Plaintiff's amended complaint summarizes the arguments he made before the Indiana Supreme Court. (R. 12, Second Am. Compl. ¶¶ 6-11.) Specifically, he argued that Right-to-Work laws are "fundamentally unfair," that "[f]ederal law requires unions to represent fairly all employees in any given bargaining unit regardless of their membership in the union," and that the laws allow "individual employees to refuse to pay their fair share of the costs of representing them, allowing such employees to ride for free on the work of the union paid for by their coworkers." (*Id.* ¶ 8.)

Shortly after the oral arguments, Defendants posted an article on NILRR's website under the headline "Operating Engineers Union Lawyer Flat-Out Lies to Indiana Supreme Court," which reported on the oral argument. (R. 12-1, Ex. A to Second Am. Compl., Post.) The article was authored by Greer. (*Id.*) The article stated:

> How can it be, then, that Dale Pierson, the top lawyer for the other union seeking to overturn Indiana's Right to Work law judicially, told the Indiana Supreme Court on September 4 that union officials' representing only those who join and pay dues "is not a legal possibility"? . . .
>
> The answer is, quite simply, that *Pierson flat-out lied*.

(*Id.* (emphasis added).) The post also refers to "a petition filed with the National Labor Relations Board seven years ago." (*Id.*) The post asserts that in this petition, lawyers for the Steelworkers Union "acknowledged without qualification that, under . . . the [NLRA], in any workplace where no union is recognized as employees' exclusive bargaining agent, employees' right to bargain with their employer through a union remain[s] available and protected, though on a non-exclusive basis, thus applicable to union members only." (*Id.* (internal quotation marks

3

omitted).) According to Plaintiff, the preceding statement is false because it fails to acknowledge that the 2007 petition was denied by the NLRB. (R. 12, Second Am. Compl. ¶ 15.)

## PROCEDURAL HISTORY

On September 11, 2015, Plaintiff filed his complaint in the Circuit Court of Cook County, Illinois. (R. 1, Notice of Removal ¶ 1.) Plaintiff alleges that NILRR's post contained false and defamatory statements and that Defendants published them knowing that they were false. (*Id.* ¶¶ 11, 14.) On December 9, 2015, Defendants timely filed their notice of removal in this Court pursuant to 28 U.S.C. §§ 1332, 1441(a), and 1446. (R. 1, Notice of Removal at 1.) On January 21, 2016, Plaintiff filed his amended complaint. (R. 12, Second Am. Compl.) Plaintiff's amended complaint contains one count alleging defamation *per se* against Defendants under Illinois law. (*Id.*)

Defendants filed their motion to dismiss on March 15, 2016, pursuant to Rules 12(b)(2) and 12(b)(6), arguing that the Court lacks personal jurisdiction over Defendants and that Plaintiff fails to state a claim for defamation. (R. 21, Mot.) The motion is now fully briefed. (R. 26, Resp.; R. 27, Reply.) As explained below, because the Court lacks personal jurisdiction over Defendants, it will not address whether Plaintiff has stated a claim for defamation *per se* under Rule 12(b)(6).

## LEGAL STANDARD

Personal jurisdiction refers to a court's "power to bring a person into its adjudicative process." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (citation omitted). A district court exercising diversity jurisdiction applies the personal jurisdiction rules of the state in which it is located. *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912 (7th Cir. 2015). This Court can thus exercise personal jurisdiction only to the extent that Illinois courts are

permitted to do so under the Illinois long-arm statute.[1] *Id.* at 912. A complaint does not need to include facts that allege personal jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). However, a defendant may move for dismissal for lack of personal jurisdiction pursuant to Rule 12(b)(2). FED. R. CIV. P. 12(b)(2).

In ruling on a Rule 12(b)(2) motion, the Court accepts all well-pleaded allegations in the complaint as true, but may also consider materials outside the pleadings such as affidavits. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). The plaintiff bears the burden of establishing personal jurisdiction when the defendant challenges it. *Kipp v. Ski Enter. Corp. of Wisc., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015). If the Court rules on a defendant's motion to dismiss based on the submission of written materials without holding an evidentiary ruling, the plaintiff must only establish a *prima facie* case of personal jurisdiction to survive dismissal. *N. Grain Mktg., LLC*, 743 F.3d at 491. In determining whether a *prima facie* case has been established, the Court will resolve all factual disputes in the plaintiff's favor. *See N. Grain Mktg., LLC*, 743 F.3d at 491. Nevertheless, the Court will accept as true any fact in the defendant's affidavits that remains undisputed by the plaintiff. *GCIU-Empl' Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).

---

[1] The Illinois long-arm statute permits the exercise of jurisdiction over a nonresident defendant who, among other things, transacts business, commits a tortious act, or owns, uses, or possesses real estate in Illinois. 735 ILL. COMP. STAT. 5/2-209(a)(1)-(3). The statute contains a catch-all provision that allows a court to exercise personal jurisdiction for any reason, so long as doing so does not infringe upon due process protections guaranteed by either the Illinois or the U.S. Constitution. *See* 735 ILL. COMP. STAT. 5/2-209(c). For purposes of the catch-all provision, "it is enough to evaluate the limits that the Fourteenth Amendment due process places on state exercises of personal jurisdiction." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715-16 (7th Cir. 2002).

## ANALYSIS

### I. Waiver

As an initial matter, Plaintiff argues that Defendants have waived their right to raise a lack of personal jurisdiction defense under Rule 12(h)(1). (R. 26, Resp. at 4-6.) Specifically, Plaintiff argues that Defendants waived "any personal jurisdiction defense" and have "subjected them[selves] to this Court's adjudicative process" because they: 1) invoked the Court's jurisdiction when they removed the case to federal court; 2) have engaged in "subsequent litigation" in this Court; and 3) failed "to adhere to the requirements of Rule 81(c)." (*Id.* at 5-6.)

"[T]o waive or forfeit a personal jurisdiction defense, a defendant must give a plaintiff a reasonable expectation that it will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." *H-D Mich., LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 848 (7th Cir. 2012) (citation omitted). In addition, the Seventh Circuit has recently held that a defendant does not waive its right to raise a personal jurisdiction defense by failing to assert the defense within the 21-day period for responding to a complaint under Rule 12(a)(1) because the Rules do not impose a strict time limit on a Rule 12(b)(2) motion. *Hedeen Int'l, LLC v. Zing Toys, Inc.*, 811 F.3d 904, 905-06 (7th Cir. 2016).

Plaintiff's argument that Defendants have waived the right to assert a personal-jurisdiction defense because they removed this case to federal court and therefore "invoked this Court's jurisdiction" fails as a matter of law. In petitioning for removal of a state-court action to federal district court, a defendant does not waive any objection he may have regarding personal jurisdiction. *Allen v. Ferguson*, 791 F.2d 611, 614 (7th Cir. 1986); *see also Benda v. Per-Se Techs., Inc.*, No. 04 C 952, 2004 WL 1375361, at *3 (N.D. Ill. June 17, 2004) ("Plaintiff has

6

suggested that Defendants waived the right to assert a personal jurisdiction defense under [Rule 12(h)(1)] by removing this case to federal court. This suggestion fails as a matter of law.").

In addition, Defendants have not waived the personal-jurisdiction defense by engaging in litigation before this Court because this case is still in its early stages. On December 14, 2015, this Court dismissed Plaintiff's state-court complaint without prejudice to the filing of a timely motion to remand or the filing of a properly amended federal complaint. (R. 6, Min. Entry.) The Court also instructed the parties to exhaust all settlement possibilities prior to filing any other further pleadings. (*Id.*) Plaintiff filed a motion to remand on January 7, 2016, (R. 8, Mot. to Remand), which the Court subsequently denied, (R. 11, Min. Entry). Plaintiff was then granted leave to file an amended complaint, (*id.*), which he filed on January 21, 2016, (R. 12, Second Am. Compl.). Following an unopposed request for a brief extension of time to answer or otherwise plead, (R. 18, Min. Entry), Defendants sent Plaintiff a letter explaining the bases for their motion to dismiss, including that they plan to "seek dismissal for lack of personal jurisdiction under FRCP 12(b)(2)." (R. 21-1, Ex. A to Mot., Letter.) Defendants filed the present motion to dismiss challenging jurisdiction on March 15, 2016. (R. 21, Mot.) While the instant motion to dismiss was pending, and pursuant to the Court's directive, the parties filed a joint status report the following week. (R. 24, Report.) In the joint status report Defendants explicitly state that "[w]hether this Court has personal jurisdiction over the Defendants" is a "major legal issue." (*Id.* ¶ 4.)

The above actions do not constitute a waiver of personal jurisdiction. Defendants have raised their personal-jurisdiction defense on no fewer than three occasions—in a letter to counsel, a motion to dismiss, and a joint status report. *See, e.g.*, *Leibovitch v. Islamic Republic of Iran*, --- F. Supp. 3d ---, No. 08 C 1939, 2016 WL 2977273, at *4 n.4 (N.D. Ill. May 19, 2016)

7

("The banks have been steadfastly raising their personal jurisdiction defenses since the beginning of their involvement in this case. . . . By no means have they misled Plaintiffs, nor have they caused this Court to expend unnecessary resources resolving the merits."). It cannot reasonably be said that Defendants delayed in raising this defense. In addition, Defendants were not substantively engaging in litigation when they participated in preliminary settlement negotiations and filed a joint status report because they were simply following this Court's directives. *See IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998) ("There is no merit to the plaintiffs' argument that SunAmerica waived its defense to personal jurisdiction by participating in the litigation on the merits, since it did so at the direction of the district judge after having raised the defense in a timely fashion." (internal citation omitted)). Indeed, Plaintiff has even acknowledged that Defendants' limited participation in the litigation process was performed "consistent with the Court's directions." (R. 26, Resp. at 5.) Notably, Defendants have not yet engaged in discovery pertaining to the merits of the case nor have they filed their answer. Simply put, Defendants have not litigated the case on its merits nor have they failed to timely raise the personal jurisdiction defense. *Compare Blockowicz v. Williams*, 630 F.3d 563, 566 (7th Cir. 2010) (finding waiver when the defendants participated "in the district court proceedings, which included both briefing and oral arguments addressing the merits of the [plaintiffs'] claim"), *and Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1296-97 (7th Cir. 1993) (finding waiver when the defendants "fully participated in litigation of the merits for over two-and-a-half years without actively contesting personal jurisdiction"), *with Swanson v. City of Hammond*, 411 F. App'x 913, 915 (7th Cir. 2011) ("[Plaintiff] also argues that the defendants waived their objections to personal jurisdiction when they moved for an extension of time to file their responsive pleading. Not so."), *and Mobile Anesthesiologists Chi., LLC v. Anesthesia Assoc. of*

8

*Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (concluding that "preliminary actions do not come close to what is required for waiver" of the personal jurisdiction defense).

Plaintiff also argues that Defendants' motion to dismiss was filed well after any applicable deadline set forth in Rule 81(c) and, thus, that Defendants have waived their personal-jurisdiction defense. (R. 26, Resp. at 6.) Rule 81(c) states in relevant part:

> (2) *Further Pleading.* After removal, repleading is unnecessary unless the court orders it. A defendant who did not answer before removal must answer or present other defenses or objections under these rules within the longest of these periods:
>
>> (A) 21 days after receiving—through service or otherwise—a copy of the initial pleading stating the claim for relief;
>>
>> (B) 21 days after being served with the summons for an initial pleading on file at the time of service; or
>>
>> (C) 7 days after the notice of removal is filed.

FED. R. CIV. P. 81(c).

Plaintiff's argument fails to recognize the actions taken by this Court. Five days after the removal of this lawsuit—and before the expiration of any deadline set forth under Rule 81(c)—the Court dismissed Plaintiff's complaint without prejudice and gave Plaintiff leave to file a motion to remand or an amended federal complaint. (R. 6, Min. Entry.) Thus, following the Court's dismissal order, there was no operative complaint for Defendants to respond to. Indeed, the burden was on Plaintiff to take the next step in this lawsuit. The Court subsequently denied Plaintiff's motion to remand, set a deadline for Plaintiff to file an amended complaint, and ordered Defendants to answer or otherwise plead to the amended complaint within 21 days of service. (R. 11, Min. Entry.) The Court's 21-day deadline for Defendants to serve a responsive pleading was in accord with Rule 12(a)(1). *See* FED. R. CIV. P. 12(a)(1)(A). Service of the amended complaint was completed on February 9, 2016, and, thus, Defendants' deadline to

answer or otherwise plead was 21 days later. (R. 20, Summons.) Before this deadline expired, Defendants filed an unopposed motion for an extension to answer or otherwise plead by March 16, 2016, (R. 16, Mot. for Extension of Time), and the Court granted the motion, (R. 18, Min. Entry). Indeed, pursuant to Rule 6(b), "the court may, for good cause, extend the time . . . with or without motion . . . before the original time . . . expires." FED. R. CIV. P. 6(b). Rule 6(b)(2) lists a series of rules that govern various deadlines that the Court is not permitted to extend but, this list of exclusions does not include the deadlines set forth in Rules 12(a)(1) or 81(c). (*Id.*) Defendants filed the instant motion to dismiss by the Court-ordered deadline. (R. 21, Mot.)

As the preceding recitation demonstrates, at no point during the course of this litigation have Defendants missed a deadline set by this Court. In addition, the Seventh Circuit has recently held that the Rules do not expressly provide a time period for filing a 12(b)(2) motion or for waiver of the defense for failure to file the Rule 12(b)(2) motion within the 21-day period to answer a complaint. *Hedeen Int'l*, 811 F.3d at 905-06. Plaintiff also does not cite to a single case to support his argument that Defendants' *timely* filings somehow operate as a waiver of their personal-jurisdiction defense. Therefore, any argument that Defendants have waived their personal-jurisdiction defense because they have missed a deadline, have not complied with Rule 81(c), or are acting in an untimely fashion, fails.[2] As such, the Court turns to the issue of personal jurisdiction.

---

[2] Plaintiff also claims that "it was error for the court to assert diversity jurisdiction" and if the Court finds it has no personal jurisdiction "its only recourse is to remand the case to Cook County." (R. 26, Resp. at 5.) As a preliminary matter, diversity jurisdiction concerns the Court's subject matter jurisdiction which is an entirely separate consideration from personal jurisdiction. In support of his argument, Plaintiff relies on *Telemedicine Solutions LLC v. WoundRight Technologies, LLC*, 27 F. Supp. 3d 883, 901 (N.D. Ill. 2014). However, *Telemedicine* does not support Plaintiff's argument. The court in *Telemedicine* held that failure to address jurisdiction before addressing the merits of a claim constitutes error and that the court could not exercise personal jurisdiction over the defendants. *Id.* at 889. However, the court in *Telemedicine* did not address the issue of waiver, nor did the court remand the case to state court. Thus, *Telemedicine* does not demonstrate to this Court that remand to Cook County is the proper course.

## II. Personal Jurisdiction

Defendants argue that this Court lacks personal jurisdiction over them. (R. 21, Mot. ¶ 4.) Defendants also argue that "Plaintiff bases jurisdiction on the fact that he is an Illinois resident and the website maintained by NILRR [is] publicly access[ible]." (*Id.*) In their view, these two facts are "simply not enough to drag a Virginia corporation and a private Virginia citizen, both of whom have minimal contacts with Illinois, into an Illinois court." (*Id.*) Plaintiff argues that personal jurisdiction exists because Defendants "aimed their intentional tort at Pierson in Illinois," and because NILRR's website specifically "tags" the articles about Illinois, Indiana, and Local 150 to direct users there. (R. 26, Resp. at 6-7.) Plaintiff believes that these contacts are sufficient to give this Court personal jurisdiction over Defendants. (*Id.*)

Courts recognize two categories of personal jurisdiction: general and specific. *Kipp*, 783 F.3d at 697; *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014). General jurisdiction allows a court to hear any and all claims against a nonresident defendant, regardless of the defendant's forum-related activities. *Daimler AG*, 134 S. Ct. at 754. Because general jurisdiction applies to conduct unrelated to the forum state, the U.S. Supreme Court has "raised the bar for this type of jurisdiction." *Kipp*, 783 F.3d at 698. Indeed, "[t]he threshold for general jurisdiction is high," because "the contacts must be sufficiently extensive and pervasive to approximate physical presence." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010); *see also Kipp*, 783 F.3d at 697-98 (general personal jurisdiction only exists when a defendant's contacts with the forum state are so "constant and pervasive" that he or she could be deemed as "essentially at home" in the forum state (citation omitted)). Thus, "isolated or sporadic" contacts with the forum state are insufficient to support the exercise of general jurisdiction. *Tamburo*, 601 F.3d at 701. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's

11

domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-54 (2011). In contrast, specific jurisdiction requires a plaintiff to show that his or her claim directly arises out of the defendant's forum-related activities. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014). "[L]imited contacts may subject the defendant only to specific personal jurisdiction, in which case the plaintiff must show that its claims against the defendant arise out of the defendant's constitutionally sufficient contacts with the state." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010).

Defendants argue that "there can be no dispute" that Greer and NILRR "are not subject to general jurisdiction." (R. 22, Mem. at 6.) Plaintiff's amended complaint does not allege general jurisdiction and his response to the motion to dismiss does not explicitly address general personal jurisdiction. However, for completeness, the Court will briefly discuss whether general jurisdiction exists. Given the fact that Greer is a citizen of Virginia, and does not own any property or assets in the State of Illinois, (R. 22-1, Ex. A to Mem., Greer Dec. ¶¶ 2-3; R. 1, Notice of Removal ¶ 1), it is clear that his domicile is not Illinois. *Goodyear*, 131 S. Ct. at 2853-54. In addition, Plaintiff has not alleged that Greer's contacts with the forum state are "so substantial," *Daimler AG*, 134 S. Ct. at 754, that they could possibly subject Greer to general personal jurisdiction in Illinois.

As for NILRR, it is a "Virginia non-stock corporation" with its principal and only place of business located in Springfield, Virginia. (R. 22-1, Ex. A to Mem., Greer Dec. ¶ 5.) NILRR does not have nor has it ever had a place of business in Illinois. (*Id.* ¶ 7.) NILRR is also not licensed in Illinois, does not have any employees or registered agents in Illinois, has no contracts with Illinois entities, and has never engaged in any advocacy campaigns in Illinois. (*Id.* ¶¶ 8, 9,

11, 14.) NILRR does admit that it has held meetings in Chicago on two occasions over the course of its 30-year history, (*id.* ¶ 15), maintains a website that is accessible in Illinois, (*id.* ¶ 13), received approximately 15 applications for scholarships from Illinois residents in the past decade, (R. 26-1, Pierson Dec. ¶ 25), and received "at least five messages through its website from Illinois individuals," (*id.*).

The Seventh Circuit has held that the maintenance of a website and the annual attendance of a trade show in the forum state are insufficient to establish general personal jurisdiction. *See Kipp*, 783 F.3d at 697-98 (holding that defendant's contacts with Illinois, which consisted of annual attendance of a trade show in Chicago and maintenance of a website which attracts Illinois residents, were too "insubstantial and episodic" to establish general personal jurisdiction). In addition, the sending of emails and the submission of scholarship applications by Illinois residents demonstrate unilateral actions directed *towards* NILRR, not that NILRR took actions that were "sufficiently extensive and pervasive to approximate physical presence." *Tamburo*, 601 F.3d at 701. Similar to Greer, it cannot be said that NILRR's contacts "are so constant . . . as to render it essentially at home in the forum State." *Kipp*, 783 F.3d at 698 (citation omitted). Consequently, Plaintiff has not shown that this Court can exercise general personal jurisdiction over Defendants.[3] Therefore, the Court proceeds to consider whether Plaintiff can establish specific personal jurisdiction over Defendants.

---

[3] Plaintiff also cites to NILRR's financial statements, filed with the Commonwealth of Virginia between the years 2012 to 2014, to show that NILRR "has otherwise done business in Illinois on numerous occasions." (R. 26, Resp. at 3; *see also* R. 26-10, Ex. 9 to Resp., Fin. Statements.) To support this argument, Plaintiff refers to the 31-page document generally without directing the Court to any particular passage or page number. The Court has carefully reviewed these records and these financial statements never mention Illinois. Put simply, nothing in them suggests to this Court that NILRR has "otherwise done business in Illinois on numerous occasions." (*Id.*) As such, the financial statements do not support Plaintiff in his argument that this Court has personal jurisdiction over Defendants.

13

Defendants also argue that the Court cannot exercise specific personal jurisdiction over them. (R. 22, Mem. at 7.) Specifically, they assert that "defendants' allegedly tortious contacts with the forum state occurred exclusively via the Internet" and that the maintenance of a website alone is simply insufficient to establish specific personal jurisdiction. (R. 22, Mem. at 7-8.) Defendants also explain that the conduct at issue was not directed at Illinois, which is demonstrated by the facts that the post at issue "reports on an event that occurred in Indiana involving legislation impacting Indiana citizens," that it refers to an issue affecting "Hoosier employees," and that while Plaintiff "happens to be an Illinois resident, this is not reported" in the post. (*Id.* at 8.) In contrast, Plaintiff argues that Defendants "expressly aimed their intentional tort at Pierson in Illinois." (R. 26, Resp. at 6.) Plaintiff argues that Defendants "intentionally published defamatory statements on the NILRR website" and that he has alleged in his amended complaint that "Defendants made these statements and published them with knowledge of their falsity or reckless disregard for their truth." (*Id.* at 7.) Plaintiff also argues that Defendants' website "specifically 'tags' articles about Illinois, Indiana, and Local 150 to direct users there, and specifically 'tags' the article about Pierson to Local 150 and its members especially in Indiana." (*Id.*)

Specific personal jurisdiction exists if Plaintiff's defamation claim against Defendants directly arises out of Defendants' constitutionally sufficient contacts with the forum state. *See uBID, Inc.*, 623 F.3d at 425. Specific personal jurisdiction is appropriate when the defendant purposely directs his activities at the forum state and the alleged injury arises out of those activities, as long as the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 476 (1985); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Where, as here, a plaintiff's claim is for

14

an intentional tort, "the inquiry focuses on whether the conduct underlying the claim[ ] was purposely directed at the forum state." *Felland*, 682 F.3d at 674 (citation omitted).

To show that a defendant's conduct was "purposefully directed" at the forum state, a plaintiff must establish: "(1) intentional conduct (or intentional and allegedly tortious conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Felland*, 682 F.3d at 674-75 (citation and internal quotation marks omitted). If a plaintiff makes these three showings, then he has established that the defendant purposely directed his activities at the forum state. *Id.* at 675. Nevertheless, the "mere fact that [the defendant's] conduct affected [a] plaintiff[] with connections to the forum State does not suffice to authorize jurisdiction." *Walden v. Fiore*, 134 S. Ct. 1115, 1126 (2014). In addition, "the 'express aiming' test cannot be satisfied merely by allegations of intentional tortious conduct. 'Something more' is needed." *Telemedicine*, 27 F. Supp. 3d at 898 (quoting *Tamburo*, 601 F.3d at 706); *see also Mobile Anesthesiologists*, 623 F.3d at 447 (noting that the standard "requires more" than accusations "of an intentional tort"). To exercise specific personal jurisdiction consistent with due process, the defendant's suit-related conduct must connect him to the forum state in a "substantial" way. *Advanced Tactical*, 751 F.3d at 801. Lastly, while there is no special test that exists for internet-based cases, the Court focuses on whether Defendants have purposely exploited the Illinois market beyond the availability of the website in the forum state. *Id.* at 802-03; *see also be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) ("Our inquiry boils down to this: has [the defendant] purposely exploited the Illinois market?"); *uBID, Inc.*, 623 F.3d at 431 n.3 ("Using a separate test for Internet-based contacts would be inappropriate" because the traditional minimum-contacts analysis "remains up to this more modern task.").

15

The Court finds that Defendants did not expressly aim their activities at Illinois. Plaintiff argues that specific personal jurisdiction exists because Defendants published the defamatory statements on the NILRR website. (R. 26, Resp. at 7.) However, the maintenance of a website and the fact that it is accessible in the forum state is insufficient to establish specific personal jurisdiction. Indeed, the Seventh Circuit has cautioned courts to be "careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.' " *Advanced Tactical*, 751 F.3d at 803. The fact that an individual from Illinois may have read Defendants' post does not establish that Defendants' alleged tortious conduct was expressly aimed at Illinois. *See, e.g.*, *Mobile Anesthesiologists*, 623 F.3d at 446 (finding that defendant's operation of a website that could be accessed in Illinois was not sufficient to support personal jurisdiction).

In addition, nothing in the post demonstrates that Defendants intentionally targeted their allegedly tortious conduct at Illinois. As Defendants point out, the article concerned an Indiana law, referenced "Hoosier employees," and reported on events that occurred before the Indiana Supreme Court. (*See* R. 12-1, Ex. A to Second Am. Compl., Post.) Nowhere in the post does it mention Illinois laws, Illinois workers, or Illinois courts. (*Id.*) While the post does accuse Plaintiff of lying, it refers to him as the "Union Attorney" without any indication of where he resides or that the union that he works for is located in Illinois. (*Id.*) In addition, there is nothing in the parties' submissions that demonstrate that Defendants knew that Plaintiff was a resident of Illinois, that the union Plaintiff worked for had a location in Illinois, or that the effects of the post would be specifically felt in Illinois. There is also no evidence that, when Greer wrote the post, his intended audience was Illinois residents. The only connection between Defendants' allegedly

tortious post and the forum state is that Plaintiff happens to live in Illinois. Simply put, these facts are insufficient to establish specific personal jurisdiction. *See, e.g.*, *Bittman v. Fox*, No. 14 C 08191, 2015 WL 5612061, at *6 (N.D. Ill. Sept. 23, 2015) ("In the end, Bittman's case for personal jurisdiction over Kleinman boils down to the undisputed allegations that he republished and commented upon information concerning an Illinois resident employed by an Illinois library on a subject-specific 'watchdog' website that is accessible by anyone, anywhere. . . . The writing and posting of the accompanying article, without more, do not suggest that Kleinman was purposefully directing or expressly aiming any conduct at Illinois[.]"); *Telemedicine Sols. LLC*, 27 F. Supp. 3d at 899 ("The content of Defendant's Google ad had nothing to do with Illinois, and Plaintiff has not alleged that the ad was specifically aimed at Illinois or even viewed by customers or potential customers in Illinois.").

Plaintiff also somewhat confusingly argues that Defendants' website "specifically 'tags' articles about Illinois, Indiana, and Local 150 to direct users there, and specifically 'tags' the article about [Plaintiff] to Local 150 and its members especially in Indiana." (R. 26, Resp. at 7.) Plaintiff argues that by using these tags the Defendants aimed their tortious conduct at Illinois. (*Id.*) In support of this argument, Plaintiff attaches NILRR's website source code. (R. 26-12, Ex. 11 to Resp., Source Code.) Plaintiff has not cited any analogous case law holding that an out-of-state defendant's use of tags in a website renders him subject to personal jurisdiction in another

state.[4] The Court has reviewed the source code that Plaintiff attaches to his response and it appears that the only two tags that reference the forum state are "Illinois" and "Local 150." (*Id.*) Notably, the source code also includes the words Kentucky, Michigan, Missouri, Ohio, Pennsylvania, Tennessee, Washington, and Wisconsin—to name a few. (*Id.*) Merely repeating the word "Illinois" or referencing a union that has a location in Illinois among other states in a website's source code does not establish that Defendants expressly aimed their conduct at the forum state. In addition, Plaintiff acknowledges that Defendants' actions are targeting union members in Indiana and not Illinois. Specifically, Plaintiff asserts that the website " ' tags' the article about Pierson to Local 150 and its members *especially in Indiana*." (R. 26, Resp. at 7 (emphasis added).) Plaintiff also does not articulate how the tag "Indiana" could possibly establish specific personal jurisdiction over Defendants in Illinois. For these reasons, Plaintiff has not demonstrated that Defendants' use of tags in their website's source code connects them to Illinois in a sufficiently "substantial way" for the Court to exercise specific personal jurisdiction over them. *Walden*, 134 S. Ct. at 1126.

Plaintiff also relies on the Seventh Circuit's decision in *Tamburo*. (R. 26, Resp. at 7.) However, the facts of *Tamburo* involved far greater contacts with the forum state than exist here. The defendants in that case knew that the defendant lived and operated his business in Illinois.

---

[4] Through its own independent research, the Court recognizes that there is some case law holding that personal jurisdiction existed over a defendant that purposely directed its harmful effects toward the forum state by use of specific metatags. *See, e.g.*, *L & A Designs, LLC v. Xtreme ATVs, Inc.*, 860 F. Supp. 2d 1196, 1200-01 (D. Or. 2012) (specific personal jurisdiction existed where nonresident defendant designed allegedly infringing interactive websites, inserted metatags of holders' trademark in the websites, knew that the mark was the name of the competitor, and it was foreseeable that holder would be economically harmed by her actions); *Xcentric Ventures, LLC v. Elizabeth Arden*, No. C 10-80058(SI), 2010 WL 2560484, at *4 (N.D. Cal. June 22, 2010) (personal jurisdiction over defendant existed where "defendant allegedly copied plaintiff's terms of service and embedded plaintiff's trademark in its metatags with the purpose of directing consumers searching for plaintiff's website to defendant's website"). However, these cases are trademark-infringement cases and Plaintiff has not directed the Court to a case that is factually analogous to the instant dispute.

*Tamburo*, 601 F.3d at 706. Additionally, defendants published multiple posts on their websites encouraging readers to boycott the plaintiff's business in Illinois and his Illinois address was supplied to readers, who were urged to contact and harass him. *Id*. Moreover, the defendants in that case personally contacted the plaintiff by email, accusing him of theft and of using stolen data in his software business. *Id*. In this case, Defendants' post reported on Indiana events relating to an Indiana law, and it does not reference Illinois in any way. (*See* R. 12-1, Ex. A to Second Am. Compl., Post.) Likewise, the post neither reports that Plaintiff is an Illinois resident nor provides any reason to conclude that he is an Illinois resident. (*Id.*) Thus, the facts of *Tamburo* are distinguishable.

Exercising personal jurisdiction over Defendants under the circumstances of this case would also "offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (internal quotation marks omitted). This forum has little interest in adjudicating this dispute. The fact that Defendants' conduct affected Plaintiff, who has connections to Illinois, does not suffice to authorize jurisdiction. *See Walden*, 134 S. Ct. at 1126. Greer is a citizen of Virginia and also works in the state, and NILRR is a Virginia company. (R. 22-1, Ex. A to Mem., Greer Dec. ¶¶ 2-3, 5.) There is nothing in the parties' submissions that demonstrates that these Defendants regularly conduct business in Illinois. Other than maintaining a publicly accessible website, holding two meetings in Chicago over the past 30 years, and occasionally receiving emails and scholarship applications from Illinois residents, Defendants have no meaningful and continuing connections to Illinois. (*Id.* ¶ 15.) In addition, Defendants could not reasonably have expected that posting an article on their website relating to an Indiana lawsuit would subject them to a lawsuit in Illinois. *See Bittman*, 2015 WL 5612061, at *6 ("On these facts, it would indeed offend traditional notions of fair play and substantial justice to hale into an Illinois court

an online journalist who ha[ve] no connection to the state merely because the subject of [the] article resides there.").

For these reasons, the Court concludes that it does not have personal jurisdiction over Defendants.

## CONCLUSION

For the foregoing reasons, the motion to dismiss (R. 21) is GRANTED, and this action is DISMISSED WITHOUT PREJUDICE to refiling in a court that has personal jurisdiction over Defendants.

ENTERED: _____
Chief Judge Rubén Castillo
United States District Court

**Dated: October 17, 2016**